Pro Se 14 (Rev. 12/16) Complaint for Violation of Civil Rights (Prisoner)

# UNITED STATES DISTRICT COURT

### RECEIVED

for the

_____ District of _____

_____ Division

AUG 0 5 2019

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT LOUISIANA
BY_____ *Kea*

Neil E. Havlik  #24985009

Case No.  **2:19-cv-1018  SEC P**

_____
*(to be filled in by the Clerk's Office)*

_____

*Plaintiff(s)*
*(Write the full name of each plaintiff who is filing this complaint.*
*If the names of all the plaintiffs cannot fit in the space above,*
*please write "see attached" in the space and attach an additional*
*page with the full list of names.)*

-v-

Oakdale Health Services and
Prison Employees "ET-AL" see attached

_____

*Defendant(s)*
*(Write the full name of each defendant who is being sued.  If the*
*names of all the defendants cannot fit in the space above, please*
*write "see attached" in the space and attach an additional page*
*with the full list of names.  Do not include addresses here.)*

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

## COMPLAINT FOR VIOLATION OF CIVIL RIGHTS

(Prisoner Complaint)

---

### NOTICE

Federal Rules of Civil Procedure 5.2 addresses the privacy and security concerns resulting from public access to electronic court files.  Under this rule, papers filed with the court should *not* contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number.  A filing may include *only*: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number.

Except as noted in this form, plaintiff need not send exhibits, affidavits, grievance or witness statements, or any other materials to the Clerk's Office with this complaint.

In order for your complaint to be filed, it must be accompanied by the filing fee or an application to proceed in forma pauperis.

---

Pro Se 14 (Rev. 12/16) Complaint for Violation of Civil Rights (Prisoner)

I.      The Parties to This Complaint

   A.      The Plaintiff(s)

        Provide the information below for each plaintiff named in the complaint.  Attach additional pages if
        needed.

        Name                                                Neil E. Havlik

        All other names by which
        you have been known:
        ID Number                                    #24985009
        Current Institution                          FCI-1 Oakdale
        Address                                      PO Box 5000
                                                     Oakdale         LA        71463

                                                     *City*          *State*      *Zip Code*

   B.      The Defendant(s)

        Provide the information below for each defendant named in the complaint, whether the defendant is an
        individual, a government agency, an organization, or a corporation.  Make sure that the defendant(s)
        listed below are identical to those contained in the above caption.  For an individual defendant, include
        the person's job or title *(if known)* and check whether you are bringing this complaint against them in their
        individual capacity or official capacity, or both.  Attach additional pages if needed.

        Defendant No. 1                              See attached page of Parties to Lawsuit
            Name
            Job or Title *(if known)*
            Shield Number
            Employer
            Address

                                                     *City*          *State*      *Zip Code*
                                        ☐ Individual capacity    ☐ Official capacity

        Defendant No. 2
            Name
            Job or Title *(if known)*
            Shield Number
            Employer
            Address

                                                     *City*          *State*      *Zip Code*
                                        ☐ Individual capacity    ☐ Official capacity

                                                                                        Page 2 of 11

Pro Se 14 (Rev. 12/16) Complaint for Violation of Civil Rights (Prisoner)

Defendant No. 3

    Name _____

    Job or Title *(if known)* _____

    Shield Number _____

    Employer _____

    Address _____

                                  *City*              *State*          *Zip Code*

          ☐ Individual capacity     ☐ Official capacity

Defendant No. 4

    Name _____

    Job or Title *(if known)* _____

    Shield Number _____

    Employer _____

    Address _____

                                    *City*              *State*          *Zip Code*

          ☐ Individual capacity     ☐ Official capacity

II.    **Basis for Jurisdiction**

    Under 42 U.S.C. § 1983, you may sue state or local officials for the "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal laws]." Under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971)*, you may sue federal officials for the violation of certain constitutional rights.

    A.    Are you bringing suit against *(check all that apply)*:

          ☒ Federal officials (a *Bivens* claim)

          ☐ State or local officials (a § 1983 claim)

    B.    Section 1983 allows claims alleging the "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal laws]." 42 U.S.C. § 1983. If you are suing under section 1983, what federal constitutional or statutory right(s) do you claim is/are being violated by state or local officials?

    C.    Plaintiffs suing under *Bivens* may only recover for the violation of certain constitutional rights. If you are suing under *Bivens*, what constitutional right(s) do you claim is/are being violated by federal officials?

                    see attached Statement of Claim page 5.

Pro Se 14 (Rev. 12/16) Complaint for Violation of Civil Rights (Prisoner)

D.      Section 1983 allows defendants to be found liable only when they have acted "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia." 42 U.S.C. § 1983. If you are suing under section 1983, explain how each defendant acted under color of state or local law. If you are suing under *Bivens*, explain how each defendant acted under color of federal law. Attach additional pages if needed.

## III.   Prisoner Status

Indicate whether you are a prisoner or other confined person as follows *(check all that apply)*:

☐      Pretrial detainee

☐      Civilly committed detainee

☐      Immigration detainee

☐      Convicted and sentenced state prisoner

☒      Convicted and sentenced federal prisoner

☐      Other *(explain)* _____

## IV.   Statement of Claim

State as briefly as possible the facts of your case. Describe how each defendant was personally involved in the alleged wrongful action, along with the dates and locations of all relevant events. You may wish to include further details such as the names of other persons involved in the events giving rise to your claims. Do not cite any cases or statutes. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

A.      If the events giving rise to your claim arose outside an institution, describe where and when they arose.

B.      If the events giving rise to your claim arose in an institution, describe where and when they arose.

See attached Statement of Claim and Complaints plus Affidavit.

Pro Se 14 (Rev. 12/16) Complaint for Violation of Civil Rights (Prisoner)

C.   What date and approximate time did the events giving rise to your claim(s) occur?

Over the past 2 years and continuing Now.

D.   What are the facts underlying your claim(s)? *(For example: What happened to you? Who did what? Was anyone else involved? Who else saw what happened?)*

See Statement of Claim, Original Complaint, Amended Complaint, plus Affidavit

## V.   Injuries

If you sustained injuries related to the events alleged above, describe your injuries and state what medical treatment, if any, you required and did or did not receive.

Multiple compression fractures of spine and torn rotator cuff plus other listed in Complaints and Affidavit.

## VI.   Relief

State briefly what you want the court to do for you. Make no legal arguments. Do not cite any cases or statutes. If requesting money damages, include the amounts of any actual damages and/or punitive damages claimed for the acts alleged. Explain the basis for these claims.

Plaintiff requests #100,000.00 from each of the defendants plus medical care and pain medication adequate for his injuries and $10,000.00 per day from April 18, 2019 until lawsuit is settled, since April 18, 2019 is the neurosurgeon consult date which confirmed all of Plaintiff's allegations and instead of them providing adequate medical care the defendants choose to do nothing.

Pro Se 14 (Rev. 12/16) Complaint for Violation of Civil Rights (Prisoner)

VII.   **Exhaustion of Administrative Remedies Administrative Procedures**

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), requires that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."

Administrative remedies are also known as grievance procedures. Your case may be dismissed if you have not exhausted your administrative remedies.

A.   Did your claim(s) arise while you were confined in a jail, prison, or other correctional facility?

☒ Yes

☐ No

If yes, name the jail, prison, or other correctional facility where you were confined at the time of the events giving rise to your claim(s).

See attached Complaints and Affidavit

B.   Does the jail, prison, or other correctional facility where your claim(s) arose have a grievance procedure?

☒ Yes

☐ No

☐ Do not know

C.   Does the grievance procedure at the jail, prison, or other correctional facility where your claim(s) arose cover some or all of your claims?

☒ Yes

☐ No

☐ Do not know

If yes, which claim(s)?

Most of them , the exceptions being the most recent ones.

Pro Se 14 (Rev. 12/16) Complaint for Violation of Civil Rights (Prisoner)

D.  Did you file a grievance in the jail, prison, or other correctional facility where your claim(s) arose concerning the facts relating to this complaint?

☒ Yes

☐ No

If no, did you file a grievance about the events described in this complaint at any other jail, prison, or other correctional facility?

☐ Yes

☒ No

E.  If you did file a grievance:

1.  Where did you file the grievance?

Oakdale Health Services
Warden's Office
Regional Offices in Texas
FBOP-DOJ in Washingto D. C.

2.  What did you claim in your grievance?

NO medical care
NO pain medication.

3.  What was the result, if any?

Ridicules lies and excuses to out right denials of everything

4.  What steps, if any, did you take to appeal that decision? Is the grievance process completed? If not, explain why not. *(Describe all efforts to appeal to the highest level of the grievance process.)*

Most of the grievances were appealed and completed , with the exception of the recent ones that Plaintiff's counselor (Mr. Smith), and Unit Manager refused to take to the Warden's Office, and/or were left on her desk for 3 weeks to 3 months before she filed them, thus they were timed - out and denied. Which is another of Plaintiff's Constitutional rights that was violated [ his right to file a grievance ].

Pro Se 14 (Rev. 12/16) Complaint for Violation of Civil Rights (Prisoner)

F.      If you did not file a grievance:

    1.   If there are any reasons why you did not file a grievance, state them here:

Some recent ones, my counselor refused to file and/or left them on her desk until they timed-out.

    2.   If you did not file a grievance but you did inform officials of your claim, state who you informed, when and how, and their response, if any:

G.      Please set forth any additional information that is relevant to the exhaustion of your administrative remedies.

In retaliation for filing a grievance concerning Plaintiff's physical abuse in the SHU on 1/4/17, Plaintiff was threatened with being stabbed to death unless he signed a recantation of his grievance , signed by the Warden,  see Complaints and Affidavit.

    *(Note:  You may attach as exhibits to this complaint any documents related to the exhaustion of your administrative remedies.)*

## VIII.  Previous Lawsuits

The "three strikes rule" bars a prisoner from bringing a civil action or an appeal in federal court without paying the filing fee if that prisoner has "on three or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury." 28 U.S.C. § 1915(g).

To the best of your knowledge, have you had a case dismissed based on this "three strikes rule"?

☐ Yes

☒ No

If yes, state which court dismissed your case, when this occurred, and attach a copy of the order if possible.

A.  Have you filed other lawsuits in state or federal court dealing with the same facts involved in this action?

☒ Yes

☐ No

B.  If your answer to A is yes, describe each lawsuit by answering questions 1 through 7 below. *(If there is more than one lawsuit, describe the additional lawsuits on another page, using the same format.)*

1.  Parties to the previous lawsuit

    Plaintiff(s)     Neil E. Havlik

    Defendant(s)     Western District of Louisiana _____

2.  Court *(if federal court, name the district; if state court, name the county and State)*

    Defendant has refiled his bankruptcy petition

    U. S. Government

3.  Docket or index number

    _____

4.  Name of Judge assigned to your case     Kathleen Kay

    _____

5.  Approximate date of filing lawsuit     4/ /18

    _____

6.  Is the case still pending?

    ☒ Yes

    ☐ No

    If no, give the approximate date of disposition. _____

7.  What was the result of the case? *(For example: Was the case dismissed? Was judgment entered in your favor? Was the case appealed?)*

    _____

C.  Have you filed other lawsuits in state or federal court otherwise relating to the conditions of your imprisonment?

    No

Pro Se 14 (Rev. 12/16) Complaint for Violation of Civil Rights (Prisoner)

☒ Yes

☐ No

D.     If your answer to C is yes, describe each lawsuit by answering questions 1 through 7 below. *(If there is more than one lawsuit, describe the additional lawsuits on another page, using the same format.)*

1.   Parties to the previous lawsuit

Plaintiff(s)  _____

Defendant(s)  _____

2.   Court *(if federal court, name the district; if state court, name the county and State)*

_____

3.   Docket or index number

_____

4.   Name of Judge assigned to your case

_____

5.   Approximate date of filing lawsuit

_____

6.   Is the case still pending?

☐ Yes

☐ No

If no, give the approximate date of disposition  _____

7.   What was the result of the case? *(For example: Was the case dismissed? Was judgment entered in your favor? Was the case appealed?)*

_____

Pro Se 14 (Rev. 12/16) Complaint for Violation of Civil Rights (Prisoner)

IX.   **Certification and Closing**

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

A.   **For Parties Without an Attorney**

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing:   Aug. 1, 2019

Signature of Plaintiff

Printed Name of Plaintiff    Neil E. Havlik

Prison Identification #      #24985009

Prison Address              FCI-1, PO Box 5000

                            Oakdale        LA.        71463

                            City           State      Zip Code

B.   **For Attorneys**

Date of signing:

Signature of Attorney

Printed Name of Attorney

Bar Number

Name of Law Firm

Address

                            City           State      Zip Code

Telephone Number

E-mail Address

Page 11 of 11

PARTIES TO CURRENT LAWSUIT

1. MR. MYERS, WARDEN, OFFEREE, OFFICIAL CAPACITY

and

Mr. Myers, individual capacity, employed at ; FCI-1, PO Box 5000, Oakdale, LA.71463

2. MRS. HOWARD, MEDICAL ADMINISTRATOR, OFFEREE, OFFICIAL CAPACITY

and

Mrs. Howard, individual capacity, employed at ; FCI-1, PO Box 5000, Oakdale, LA. 71463

3. MRS. MACHELLA CHANO, ASSISTANT MEDICAL ADMINISTRATOR, OFFEREE, OFFICIAL CAPACITY

and

Mrs. Machella Chano, individual capacity, employed at ; FCI-1, PO Box 5000, Oakdale, LA. 71463

4. DOCTOR ALEXANDER, MD., OFFEREE, OFFICIAL CAPACITY,

and

Doctor Alexander, individual capacity, employed at ; FCI-1, PO Box 5000, Oakdale, LA. 71463

5. DOCTOR RICHARD GRIFFIN, MD/CD, OFFEREE, OFFICIAL CAPACITY

and

Doctor Richard Griffin , individual capacity, employed at ; FCI-1, PO Box 5000, Oakdale, LA. 71463

6 MRS. THOMAS, FAMILY NURSE PRACTITIONER, OFFEREE, OFFICIAL CAPACITY

AND

Mrs. Thomas, individual capacity, employed at ; FCI-1, PO Box 5000, Oakdale, LA. 71463

7. MR. LEDEAUX, CORRECTIONAL OFFICER, OFFEREE, OFFICIAL CAPACITY

and

Mr. Ledeaux, individual capacity, employed at  ; FCI-1, PO Box 5000, Oakdale, LA.71463

8 and 9. --2 "JOHN DOES", CORRECTIONAL OFFICERS, OFFEREES, OFFICIAL CAPACITIES

and

Mr. "John Does", individual capacities, employed at ; FCI-1, PO Box 5000, Oakdale, LA.71463.

*Discription of Individuals Involvement*

## STATEMENT OF CLAIM

Comes Now, Plaintiff, Neil Havlik, pro-se, has filed his Original lawsuit as a tort claim lawsuit. Plaintiff then filed an Amended Complaint with Supplements on _____ , which named individuals as added Defendants. These added Defendants ( being individuals, were dismissed from both the Original Complaint and the Amended Complaint, due to the fact that only the government can be named in a tort claim lawsuit. ), they were dismissed without prejudice and Plaintiff was informed he must pursue his lawsuit against them as a 1983 or Bivens lawsuit. Plaintiff hereby names the individual defendants in both their OFFICIAL and individual capacities and files this enclosed Original Complaint and Amended Complaint lawsuit against them with the following brief description of their involvement and actions in connection with these Complaints as follows ;

1. Mr. Myers, Warden, has failed to provide his employees (correctional officers and Health Services medical employees), with the proper training to work with and handle disabled and elderly people. Proof of this is that with

an electric lift in the SHU, to transport disabled inmates from one floor to another, the correction officers, state to the inmate that it is prison policy to hand -cuff elderly disabled inmates who need to use a cane to walk or stand, with their hands behind their backs and drag them down the stairs instead of using the electric left not 10 feet away , that was installed at great expense for that purpose.

Warden Myers, is ultimately responsible to see to the correctional officers being properly trained to handle elderly disabled people, especially since FCI-1 Oakdale is a care level 2 facility , which means that they have a larger than normal population of elderly and disabled inmates that require far more and different care than the normal population of a care level 1 facility. He has failed miserably at this and caused the 3 correctional officers ( through lack of training), to physically abuse the Plaintiff by braking his back and tearing his rotator cuff due to the fact they were not trained to use the electric lift not 10 feet away for the purpose it was installed for.

Warden Myers, is also ultimately responsible for the Oakdale Health Services employees repeated and constant denial of medical care and pain medication to the Plaintiff for almost 3 years now , since the Plaintiff's x-ray results taken 1 month after he was abused in the SHU, showed a compression fracture of his T-12 vertebra. . While he answers the Plaintiff's Administrative Remedy BP-9s with total lies and false statements that FALSELY claim the Plaintiff is being treated. Being seen by an FNP who does nothing is NOT being treated.

Warden Myers has put forth a signed written CONTRACT to provide the inmates with the right to timely medical care and adequate pain medication. These copies of this Contract can be found in the inmate's handbook and posted on the wall of Oakdale Health Services waiting room.   Again he fails miserably at this responsibility.  Warden Myers written Contract states that the inmate have (among other things), the right to timely medical care and adequate pain medication, and have the right to be housed in a clean and safe environment, yet the Unit the Plaintiff is housed in has Black Mold all over the ceiling of the Unit. Which is causing 30 to 40 % of the inmates to have various breathing illnesses due to Black Mold Poisoning.  The Black Mold Poisoning has caused the Plaintiff to now have COPD, an incurable disease which Dr. Griffin just cut his medication in half for in retaliation for Plaintiff's filing grievances.

Warden Myers has been notified through Plaintiff's filings of BP-9s to his office, of his and Oakdale Health Services medical center's failure to live up to their end of the Contract by denying Plaintiff medical care and pain medication, and as a result is in Default of said Contract and liable for all damages sought as a result  thereof.

Mrs. Howard, as Oakdale Health Services medical Administrator, is ultimately responsible for the actions or failures of her employees, to perform their medical duties in a correct legal, timely, and acceptable manor, as the inmates have a Constitutional right to receive adequate medical care and pain management.

Mrs. Howard, has maintained a policy at Oakdale Health Services medical center, of charging all inmates a sick-call fee for all visits to medical. Even after the Plaintiff personally notified her both verbally and in writing, that this is a direct violation of the Inmate Health Care Act of 2002, and a Federal crime.  Her response is " I don't care, we are going to continue to do it".  To intentionally violate an Act of Congress is NOT only a Federal Criminal Offence, it is right up there with Treason.

Mrs. Chano, as Assistant Oakdale Health Services Administrator, is also  liable and responsible for the actions and or " deliberate indifference " of the medical employees under her supervision and fails miserably  to do her job.

Mrs. Chano has repeatedly committed perjury and fraud by intentionally withholding all of the critical documents concerning the severity of Plaintiff's injuries, from the Plaintiff's medical records, she SWORE to be true and complete.

Mrs. Chano, has repeatedly lied to the Warden's Office, stating the Plaintiff is receiving adequate medical care, while not allowing Plaintiff to be seen by a neurosurgeon for over 2 and a half years , after he was physically abused by staff in the SHU on 1/5/17.  and continues to lie and state there is nothing wrong with the Plaintiff , while the neurosurgeon states if Plaintiff's spine impingement gets any worse at all, he will be paralyzed from the neck down.

Mrs. Howard and Mrs. Chano are both in Default of their Contract with the Plaintiff to provide him with timely medical care and pain medication adequate to suit his severe injuries.

Doctor Alexander, failed at his responsibilities to provide the Plaintiff with adequate medical care by allowing the Oakdale Health Services medical center employees under him , to intentionally deny the Plaintiff his Constitutional right to timely medical care and adequate pain management, by not intervening and making sure Plaintiff was seen by the Orthopedist and neurosurgeon soon after h the Plaintiff's x-rays showed the compression fracture of his T-12 vertebra a month after his physical abuse in the SHU on 1/5/17. Instead, it was over 2 and a half years later before the Plaintiff was allowed to see a neurosurgeon about his " broke back", which Chano says he doesn't have.

Doctor Alexander stated in front of 17 witnesses ,in the hallway on 7/18/18, that he was cutting off all of the Plaintiff's pain medications in retaliation for the Plaintiff having filed a grievance against FNP Thomas for denying him medical care, and he did. Inmates have a Constitutional right to file a grievance and be free from retaliation for so doing, according to Supreme Court decision in 2017. Dr. Alexander violated the Plaintiff's rights to timely medical care and pain medication and to be free from retaliation for filing a grievance.

Doctor Griffin has repeatedly refused to provide Plaintiff with either medical care or pain medication , even after Plaintiff had his neurosurgeon consult on April 1, 2019, which took Oakdale Health Services over 2 and a half years and a lawsuit being filed to even allow Plaintiff to get his neurosurgeon consult. At that neurosurgeon consult, Dr. Jeneau, the Harvand educated neurosurgeon, stated the" Plaintiff is lucky he can still walk , and should his spinal impingement get any worse at all, he will be paralyzed from the neck down.

Plaintiff was seen by Dr. Griffin on June 13, 2019, for what was supposed to be and is listed on the computer as such, the neurosurgeon consult that Oakdale Health Services is required to provide the inmate with, which is to discuss the neurosurgeon's consult results with the Plaintiff and inform him as to what procedures he will need as a result . Dr. Griffin refused to even discuss the matter with the Plaintiff instead, he forged a psychology required release to prescribe a drug similar to Thomasine, and when asked him what it did, Dr, Griffin said " it will make you sleep, so you won't be able to bother us with your court filings any more. " Then he also stated " you will NOT get any pain medication from this place. " Then just to be the jerk he is, he cut off half of Plaintiff's medications for his COPD , which is an incurable disease that does not get better on its own. , simply as retaliation .

Since Plaintiff's neurosurgeon consult on April 18, 2019, over 3 months ago, Dr, Griffin not only has done absolutely nothing in the way of providing medical care for this most serious condition of likelihood of penalization, but he has refused to even discuss the situation with the Plaintiff. Complete denial of medical care.

Dr. Griffin did give the Plaintiff a POST surgery hand out consisting of exorcizes to be done after the Plaintiff had his rotator cuff surgery.

had the rotator cuff surgery. He gave it to the Plaintiff on June 13,2019, and told him to do these exorcizes, even though he hadn't had the surgery yet.

Plaintiff was told by the Orthopedist [ the doctor to do the surgery], to keep his arm in a sling until the surgery. Plaintiff tried to do a few of the exorcizes Dr. Griffin supplied him with and now can no longer move his arm and shoulder at all without extreme pain. Plaintiff went to sick-call and FNP Thomas refuses to see him. Again, total denial of medical care.

FNP Thomas, ( family nurse practitioner ), has refused to see the Plaintiff 5 times in a row now, for sick-call , (yet he is charged a co-pay fee, a Federal criminal Offence, in violation of the Inmate Health Care Act of 2002), and once Mrs. Howard ordered Mrs. Thomas to speak to the Plaintiff about his visits with the neurosurgeon and Orthopedist consults that took place in the past 4 months ( she is required to consult the Plaintiff about them within a few days after they occur.).

Plaintiff has seen FNP Thomas 51 times in the past 2 and a half years since he was physically abused in the SHU , and each time he has told her about the increased pain in his rotator cuff and spine, her response was " if it doesn't get better or gets worse, come back to sick-call again (and be charged another co-pay fee), and be seen again. Mrs.Howard, Mrs. Chano, and FNP Thomas state and make the Warden believe that being seen and told to come back if it doesn't improve or gets worse, is the equivalent of being treated, IT IS NOT.

FNP Thomas, lied to the Plaintiff when asked if he was scheduled for any other medical procedures then the EGD that Doctor Savoy had ordered. Thomas pretended to look it up 2 times on the computer and lied and stated "' no just the EGD like you had last time"> Plaintiff was put in the SHU prior to the procedure and soon there after no one would tell him what procedure he was scheduled for.

Plaintiff was held 7 days with NO medication for his heart or any thing else, and was never taken for the procedure. Finally, Plaintiff suffered a stroke and they released him but wouldn't let him see a doctor. Later he was able to get a copy of his medical records which revealed that Thomas had lied to him and put him in for a colonoscopy also with the EGD, against both the Plaintiff's and Doctor Savoy's written orders.

FNP Thomas has simply refused to see the Plaintiff for over 5 months now for his sick-call interviews. Total denial of medical care.

Mr. LeDeaux and the other " John Doe " correctional officers are responsible for violating the Plaintiff's Constitutional rights by disregarding the fact that the Plaintiff was disabled and elderly, and could barely stand up. They grabbed his hands and cuffed them behind his back, so he couldn't use his cane, then pushed him to the stairs and when he started to fall, they grabbed his arms and drug him down the stairs, with his cane still in his hands bouncing down the stairs behind him, this is on the camera video, . The fact that there is an electric lift 10 feet away , apparently never entered their minds, as they laughed and thought the whole seen to be real funny.

Physical abuse of the elderly and physical abuse of the disabled are 2 separate felony charges in the state of Louisiana, each carries a 5 to 99 year sentence. These correctional officers , aside from their criminal acts, violated the Plaintiff's rights under the Americans with Disabilities Act and Human right Acts.

A month after the Plaintiff was physically abused in the SHU, on 1/5/17, He filed a grievance and in retaliation, was put in the SHU again and told he would be held there for 2 to 3 months and then be sent to the Mexican prison where he would probably be stabbed to death. , unless he would sign a recantation of his grievance which the Warden had to sign off on.

Defendants have violated Plaintiff's Constitutional rights ;
1. of being free from cruel and unusual punishment.
2. of being free from retaliation for filing a grievance.
3. denying his right to file a grievance
4. denying him his right to medical care.
5. denying him his right to pain medication.
6. denying him his rights under the Americans with Disabilities Act.
7. denying him his rights to not be charged a co-pay fees under the Inmate Health Care Act of 2002.
8. denying him his right to due process.
9. denying him other rights that as a pro-se litigant, he may not be aware of.

Date ; _August 1, 2019_

Respectfully Submitted
BY ; _____
Neil Havlik #24985009
FCI-1 Oakdale
PO Box 5000
Oakdale, LA. 71463

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA

RECEIVED

AUG 0 5 2019

TONY R. MOORE. CLERK
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT LOUISIANA
BY_____

Neil E. Havlik    24985009                    )
                                               )
V.                                             )    Case Number; :
                                               )
Oakdale Health Services and                    )
Prison Employees " ET - AL "                   )
    see list                                   )
                                               )
                                               )
                               )               )

.PLAINTIFF'S AMENDMENT AND REPLY TO COMPLAINT

Plaintiff, Neil Havlik, pro se, respectfully requests this Court to submit and file the following Amendment Suppliment, and addition of defendants and relies on the following ;

1. Plaintiff brings this action pursuant to the applicable provisions of the Federal Tort Claims Act.

2. Plaintiff brings this action pursuant to Federal Rule of Civil Procedure ; " A party may amend his pleading as a matter of coarse within 21 days of the pleading or 21 days after service of a responsive pleading or motion to dismiss. FRCP 12 (b), (e), or (f). FRCP 15 (a) (1).

3. Plaintiff asks this Court to construe his pro-se pleadings liberally to compel the FBOP-DOJ to provide equal medical and dental care under any applicable law or statute WITHOUT retaliating against the Plaintiff.

4. Plaintiff respectfully informs the Court that he names the additional defendants, in both, their official and individual capacities and adds information which has emerged, been made available, or is appropriate to clarify the bases of his claims.

5. Plaintiff originally filed the following tort claims as separate independent claims. However, when the FBOP- DOJ at Regions in Texas received these claims, they determined on their own, that they were to be supplements to the original Tort claim # TRT-SCR-2017-04938 and stated that they would be added to said claim also resulting in extending the 6 months due date. Enclosed are the letters from the US DOJ-FBOP South Central Regional Office in Texas stating these facts see exhibits A-1, A-2, A-3, A-4,

6. Plaintiff respectfully moves this Court to issue summons to the additional defendants in both their official capacity and individual capacity. Havlik is in custody of the FBOP-DOJ and subordinate to defendant employees, and wishes to avoid confrontation and retaliation. The additional defendants are as lollows ;

MR. MYERS, WARDEN, FCI-1 OAKDALE-1, OFFEREE, OFFICIAL CAPACITY.
and;
    Mr. Myers, individual capacity, offeree.

MRS. HOWARD, MEDICAL ADMINISTRATOR, FCI-1 OAKDALE-1, OFFICIAL CAPACITY, OFFEREE.
and ;
    Mrs. Howard, individual capacity, offeree.

MRS. THOMAS, FAMILY NURSE PRACTITIONER, FCI-1 OAKDALE-1, OFFEREE, OFFICIAL CAPACITY.
and;
    Mrs. Thomas, individual capacity, offeree.

MR. LEDEAUX, CORRECTIONAL OFFICER, FCI-1 OAKDALE-1, OFFEREE, OFFICIAL CAPACITY.
and ;
    Mr. LeDeaux, individual capacity, offeree.

MR. "JOHN DOE", CORRECTIONAL OFFICER, FCI-1 OAKDALE-1, OFFEREE, OFFICIAL CAPACITY.

ULINCS  24985009 - HAVLIK, NEAL E - Unit: OAK-V-A

----------------------------------------------------------------------------------------

FROM: Stilly, Eliza
TO: 24985009
SUBJECT: SF95 Complaint
DATE: 05/18/2018 01:06:25 PM

UNITED STATES DISTRICT COURT
       WESTERN DISTRICT OF LOUISIANA

NEIL HAVLIK                    PLAINTIFF

V.     CASE NO.. _____

UNITED STATES             DEFENDANT

        PLAINTIFF'S VERIFIED COMPLAINT

Comes now Plaintiff Neil Havlik (Plaintiff) and for his verified complaint states:

       JURISDICTION AND VENUE, GENERAL AND COMMON ALLEGATIONS

1.  Plaintiff is a federal prisoner in the custody of the Department of Justice, Federal Bureau of Prisons, (DOJ-FBOP), confined at FCI Oakdale-1, with the mailing address set forth below.  Said federal prison is within the geographic boundaries of the US District Court for the Western District of Louisiana.

2.  The acts and omissions complained of herein occurred primarily at Oakdale-1.  During the times relevant to this lawsuit Plaintiff has been confined at Oakdale-1.

3.  Venue is thus proper under the general venue statute and otherwise.  See 28 USC 1381 (b).

4.  The Federal Tort Claims Act (FTCA) 28 USC 2671 et seq., authorizes this suit.

5.  Plaintiff attaches hereto a copy of his FTCA Tort Claim, as Exhibit "1."  All exhibits hereto are incorporated herein as if set forth word for word.

6.  Plaintiff received a "right to sue" letter.  A copy of this letter is attached hereto as Exhibit "2."  As can be seen by this letter, Plaintiff's lawsuit is timely within the meaning of the law.

7.  Thus this court has jurisdiction and venue of all the claims raised herein.

8.  All counts are based on negligence or gross negligence or any other legal theory reasonably discernable from the facts stated.

  COUNT 1 -  NEGLIGENCE CAUSING BACK INJURY, AND ALSO NEGLIGENCE IN THE TREATMENT AND ACCOMMODATION OF THE RESULTING INJURY

9.  Claimant was taken to SHU on or about 1-4-17.

10.  Claimant requires a cane to walk.

11.  Claimant was handcuffed with his hands behind his back.

12.  The use of handcuffs, behind the back, prevented Claimant from using the cane for assistance in walking.

13.  Claimant was forced to go down steps in the SHU building.

14.  DOJ-FBOP personnel neglected to use a lift or other device suitable to provide safe movement for an individual of Plaintiff's medical condition.

15.  This caused Plaintiff's back to "pop," and also caused an injury that created a black and blue area on his arms, which

TRULINCS 24985009 - HAVLIK, NEAL E - Unit: OAK-V-A

---------------------------------------------------------------------------------------------------

lasted about 3 weeks.

16.  Plaintiff has suffered chronic back pain as a result of this incident.

17.  Since this incident Plaintiff's breathing often causes sharp pain. Plaintiff must be very careful with his breathing just to breathe without sharp pain.

18.  Since the incident, Plaintiff cannot sleep on his back, or lie on his back to rest, because that causes pain.

19.  Plaintiff has asked for suitable accommodations for his back, such as a suitable mattress, whether at government expense or at his own expense.

20.  Plaintiff is denied a reasonable mattress or pillow, consistent with his medical condition.

21.  Other federal prisons provide inmates with suitable mattresses and pillows, whether or not they have spinal or other medical problems requiring accommodation.

22.  The acts and omissions complained of herein constitute negligence, which has caused serious and substantial damage to the Plaintiff.

23.  The acts and omissions complained of herein are in contravention of the Standards and Expected Practices of the ACA (explained further in the next count).

COUNT 2 - DENIAL OF TIMELY AND ADEQUATE DENTAL CARE

24.  Plaintiff has been denied timely and adequate dental care, since coming to Oakdale-1.

25.  Plaintiff has been deprived of several salvageable teeth due to the lack of routine dental care at Oakdale-1.

26.  The standard operating procedure at Oakdale-1 is to wait until the inmate can't stand the pain, and then demand that the inmate sign an "informed consent" form saying that they agree to the extraction of the tooth.

27.  In fact, in Plaintiff's case such "informed consent" was neither informed nor voluntary.

28.  The American Correctional Association (ACA) has promulgated Standards and Expected Practices, primarily through a grant from the Department of Justice, (DOJ) which are contained in a book entitled "Standards for Adult Correctional Institutions, 4th Edition (Standards, 4th Ed.).

29.  Oakdale-1 makes a complete mockery of the Standards and Expected Practices of the ACA with respect to dental care at EP 4-4344, 4-4347, 4-4348, 4-4349, 4-4360, 4-4362, 4-4375, 4-4380, 4-4381, 4-4397, virtually every Standard and Expected Practice related to Performance Improvement, as well as other Standards and Expected Practices.

COUNT 3 - FAILURE TO TIMELY AND COMPETENTLY TREAT A CONDITION OF THE ESOPHAGUS

30..  Plaintiff had been at the time of his Tort Claim coughing up blood for about 15 months.

31.  Oakdale-1 personnel neglected and refused to provide care for Plaintiff's condition within a reasonable time, such as might reasonably comport with the community standard of medical care.

32.  Plaintiff explained to the proper personnel that his sister had gotten complete relief, by certain procedures involving the insertion of something that looks like a balloon down the esophagus, repeated 4-5 times.

33.  Plaintiff has not had any such additional procedures.

34.  Plaintiff therefore continues to suffer severely from his condition.

35.  On information and belief, certain medical personnel have overridden the sound medical judgment of medical professionals, in order to deny Plaintiff necessary medical care.

TRULINCS 24985009 - HAVLIK, NEAL E - Unit: OAK-V-A

-----------------------------------------------------------------------------------------

36.  Inmates are called to "chow" one housing unit at a time.

37.  Both the ACA and the Program Statements (statements of policy of the DOJ-FBOP) require that inmates be afforded 20 minutes to eat.

38.  Generally, the last 2-4 housing units are not afforded 20 minutes to eat their food.

39..  Because Plaintiff requires a cane to walk, he gets to the chow hall much more slowly than other inmates.

40.  Plaintiff often does not get enough time to eat his food.

41.  This particularly deprives Plaintiff of the healthiest foods, such as vegetables or fruit that take the longest to eat.

42.  Inmates are forbidden to take food out of chow hall.

43.  Some inmates have been accused of "stealing" for taking food out of chow hall, and have as a result lost 27 days of "good time" plus loss of privileges, time in disciplinary segregation in SHU, etc.

44.  Inadequate dental and medical care, and other factors outlined in this complaint, have deprived Plaintiff of good and sufficient and healthy food and nutrition.

45.  All the foregoing amounts to negligence or gross negligence or worse.

46.  Plaintiff's coughing up blood exacerbates his back pain and difficulty breathing.

47.  As a result of the acts and omissions complained of herein, Plaintiff now has constant pain in his right shoulder.

WHEREFORE, Plaintiff respectfully requests compensatory damages in the amount of $950,000; costs and attorneys fees to the extent authorized by law; and such other and further relief as may be appropriate whether or not specifically requested.

VERIFICATION

Plaintiff by his signature below pursuant to 28 USC 1746 declares under penalty of perjury that the foregoing statements are true and correct.

)
)
By: _____                    Date _5/21/18_____

Neil Havlik
FCI Oakdale-1
PO Box 5000
Oakdale, LA 71463-5000

CERTIFICATE OF MAILING -- PRISON MAILBOX RULE

Plaintiff by his signature above pursuant to 28 USC 1746 declares under penalty of perjury that he placed a copy of this original verified complaint in the US mail on the date stated above, with sufficient 1st class postage attached, addressed to the clerk of court for filing via CM/ECF.

Case Name;                    Havlik v. United States

Case Number;                  2;18-cv-00692-UDJ-KK

## CERTIFICATE OF FILING

Notice and certificate of filing that Havlik has furnished 2 copies , one for each of the other parties  as ordered by United States Magistrate Judge.  Parties are as follows;

1. United States through the United States Attorney for the Western District of Louisiana.

2. United States through the United States Attorney General.

3, a. MR. MYERS, WARDEN, FCI-1 OAKDALE-1,
   OFFEREE, ORIGINAL CAPACITY.
   and;
   a. Mr. Myers, individual capacity, Offeree.

4, b. MRS. HOWARD, MEDICAL ADMINISTRATOR,
   FCI-1 OAKDALE-1, OFFEREE, OFFICIAL CAPACITY.
   and;
   B. Mrs. Howard, individual capacity, offeree.

5, c. MRS. THOMAS, FAMILY NURSE PRACTISHIONER,
   FCI-1 OAKDALE-1, OFFEREE, OFFICIAL CAPACITY.
   and ;
   c. Mrs. Thomas, individual capacity, offeree.

6, d.MR. LEDEAUX, CORRECTIONAL OFFICER, FCI-1
   OAKDALE-1, OFFEREE, OFFICIAL CAPACITY.
   and;
   d. Mr.LeDeaux, individual capcity, offeree.

)

)

By; Neil Havlik/

Neil Havlik  24985009
PO Box 5000
Oakdale, La. 71463

Date:  Pec. 6, 2018

RECEIVED

AUG 0 5 2019

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT LOUISIANA
BY_____

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA

Neil E. Havlik    24985009                    (        )

V.                                                     )    Case Number;

Oakdale Health Services and                            )
Prison Employees " ET - AL "
see list                                               )

                                                       )

Amended
### PLAINTIFF'S VERIFIED COMPLAINT -- SUPPLEMENT # 1.

### ILLEGAL CO-PAY FEES CHARGED BY OAKDALE MEDICAL

### ATTACHED TO AND CONTINUING ORIGINAL COMPLAINT

48. Plaintiff sustained loss of personal property ( funds from his commissary account), by FCI-1 Oakdale-1 medical staff consistently and regularly charged Plaintiff and other inmates Co-Pay fees for chronic - care issues, sick-call visits to renew existing Dr. prescribed medications, and sick-call fees for visits concerning issues that the inmate had been seen for previously but were not treated for.  The Federal Tort Claims Act & 2672 allows for damages against the United States for loss of property, caused by negligent or wrongful act or omission of any employee of the agency acting within the scope of his office or employment.  Charging Co-Pay fees in these situations are a direct violation of the Inmate Health Care Act of 2002 and a Federal criminal offence.

49. After Plaintiff informed the Oakdale medical staff of these facts, their response was, "we don't care, this is our policy and we are going to continue to do it".  The Plaintiff suffered both physical and physiological injury due to these Co-Pay charges because they left him without sufficient funds to purchase his Dr. prescribed medications for treatment of his chronic pain and bleeding esophagus and ulcers on many occasions. Plaintiff suffered psychological injury as a result of this by having to suffer more chronic and serious pain and slow to non-existant recovery or healing of these and other chronic -care issues for the past 8 years. This is unquestionably "deliberate indifference". see exhibit B-1.

WHEREFORE ;
    Plaintiff requests an additional $200,000.00 property and personal injury for this additional complaint, along with all other proper relief specifically requested or not, plus additional attorney fees and costs ,and paralegal fees.

PLAINTIFF'S VERIFIED COMPLAINT -- SUPPLEMENT #2.

"WITHHOLDING PAIN MEDICATIONS AND PAIN MANAGEMENT"

ATTACHED TO AND CONTINUING ORIGINAL COMPLAINT

50. Dr. Alexander and FNP Thomas knew about Plaintiff's serious medical needs as they have been treating him for 5 years now. On 7/18/17, Plaintiff was waiting in the Oakdale medical waiting room for an appointment with FNP Thomas, Dr. Alexander came out of his office and walked up to the Plaintiff, Havlik, in front of 17 witnesses in the waiting room, and asked Havlik if he had filed a grievance against FNP Thomas, Havlik responded in the affirmative and Dr. Alexander said, " I am going to cut off all your pain medications for doing that", which he did. A week later, Havlik, had an appointment to see Dr. Alexander. When Havlik got into Dr.s office, Dr. Alexander called FNP Thomas into his office and in front of her asked Havlik " what did I tell you last week about your pain medications",. Havlik stated, "you said you were going to cut off all my pain medications in retaliation for filing a grievance against FNP Thomas". Dr. stated "thats right and I did." This "deliberate indifference" has caused the Plaintiff harm and injury which increases dramatically on a day to day basis.

51. This "deliberate indifference" also causes the Plaintiff extreme injury and harm psychologically which increases dramatically on a day to day basis. Since then, and to this day 12/1/18, the Plaintiff has made sick-call at least once per month and told FNP Thomas , in front of a chaperone, how his level of pain is steadily been increasing and how every time he takes a breath he gets a sharp pain from his T-12 vertebra radiating out to his torn rt. shoulder and down to his elbow, how every time he swallows food now and it gets to that level he gets that same sharp pain, and how he can no longer sleep on his back because when he does he gets that same sharp  pain, and now when he sits in a chair without arm rests he gets that pain , and it has gotten so bad that he now has to lean forward on his cane when even sitting to help support his upper back to help relieve some of the pain.  FNP Thomas 's response each time is "you will have to see the doctor about that". Inmates have NO way to make appointments to see the doctor, it is the FNP 's responsibility to make those appointments for the inmates. Plaintiff, Havlik, has NOT been allowed to see a doctor in over a year and a half since the Dr. cut off his pain medications.

52. Dr. Alexander and FNP Thomas have both failed to respond reasonably and in a timely manor after repeatedly being informed of Plaintiff's much greater need for pain management and pain medications due to physical abuse by staff in the SHU on 1/5/17, which caused a compression fracture of his T-12 vertibra and torn rt. shoulder rotator cuff, which increase his pain level dramatically , yet on 7/18/17, they cut off his pain medication in retaliation for his filing a greivence against FNP Thomas concerning it taking so long for anything to be done about this serious medical issue. About 6 months previous to 7/18/17, Plaintiff was receiving Tylonal with codein twicw per day.

53. One of the Oakdale Warden's office responces to Plaintiff's greivences about his pain management being cutt off in retaliation, was to lie and try to claim that they were cut off due to Plaintiff not showing up in pill-line to get them, they must have forgot that their is a record of that which clearly shows that the Plaintiff NEVER missed a single dose. see exhibit B-2 (attachment to standard form 95 tort claim.)

WHEREFORE ;

Plaintiff requests an additional $600,000.00 personal injury for this suppliment and additional action and complaint, attorney fees, fees paid to other inmates to help him write his legal work, since Plaintiff's Rt. shoulder rotator cuff is torn and prevents him from writing and typing all his legal work, computer true-links charges , and all other relief due the Plaintiff whether specifically requested or not.

PLAINTIFF'S VERIFIED COMPLAINT -- SUPPLIMENT # 3.

WITH HOLDING AND DENYING MEDICAL CARE

ATTACHED TO AND CONTINUEING ORIGINAL COMPLAINT

54. Plaintiff has serious need for reasonable timely medical care and has repeatedly informed the Oakdale medical staff of these facts and yet, due to their "deliberate indifference", they have ignored his requests.  The Plaintiff's repeated requests to the Oakdale medical staff for medical care in a timely mannor as is stated in the "Contract" between the Plaintiff and the Defendants and the Defendant's failure to RESPOND or PERFORM according to the Defendant's legal Constitutional requirements and their written acknowlegements to do so, as it is their legal responcibility to do so, constitutes a BREACH of Contract by the Defendant and fulfills the Plaintiff's ("OFFEROE's), requirements to give notice to all parties that Plaintiff (Offeror), consents to have given all OFFEREES all such corresponding rights that Offerees are entitled to, that may arise in regard to the subject matter of the valid contract between the Parties and this EQUITY Contract suit to

enforce Offeree's specific performance in accord with the terms and conditions of the valid contract between the parties.

55. On 1/5/17, Plaintiff was physically abused by 3 Correction Officers who drug him down the stairs with his hands cuffed behind his back causing a compression fracture of his T-12 vertebra and a torn RT. shoulder rotator cuff. Plaintiff was seen by FNP Thomas 4 days later after making a sick-call visit the day after he sustained the injury. FNP Thomas didn't schedule x-rays until 3 weeks later, (end of January). On 2/15/17, Plaintiff was given a chest x-ray which showed the compression fracture of his T-12 vertebra. By coincidence, Plaintiff had ordered a copy of his medical records at that time and received a copy of this 2/15/17 x-ray. Plaintiff again saw FNP Thomas in early March of 2017 and again told her about his back and shoulder pain and asked her what the February x-ray showed? She pretended to look it up and said there is NO February x-ray in your file. and the others just show a little authorities. Plaintiff showed her his copy of the x-ray and than asked her to explain this . She said there is nothing like that in the computer files.

56. Plaintiff continued to make sick-call visits, 2 per month, after that, complaining about his back and shoulder pain getting steadily worse, nothing was done. Plaintiff was NOT allowed to see the Orthopedist until 10 months after the physical abuse he sustained in the SHU on 1/5/17, even though Oakdale medical was aware of his 2/15/17 x-ray showing a compression fracture of his T-12 vertebra.

57. Plaintiff saw the Orthopedist in Leesville for a consult in October of 2017, and her diagnosis was a compression fracture of the T-12 vertebra and a torn rt. shoulder rotator cuff, from having his hands cuffed behind his back and being drug down the stairs after starting to fall. see exhibit Orthopedist reports with Plaintiff's Affidavit #A-1. The Orthopedist ordered MRI s and stated that with the 2/15/17 x-ray, showing a compression fracture, Oakdale medical should have made the Plaintiff a consult with a neurosurgeon, since as an Orthopedist, she would need 4 more years of med school to have anything to do with the back or spine.

58. Plaintiff was not allowed to get the MRI s until 8 months later, on 5.23/18. The MRI s confirmed the Orthopedist's diagnosis and

also added serious damage to the vertibra higher up. The orthapedist reccamended the surgery to repair the torn rotator cuff and requested that Oakdale medical make an appointment with a neurosurgon to deal with the Plaintiff's back or spine, as the Orthapedist is not qualified to do so.

59. The South Central Regional Office in Texas, approved the rotator cuff surgery 2 weeks later after the above reccamendation, on 6/9/18.

60. On 6/5/18, Plaintiff was taken to the Orthapedist in Leesville for a consult concerning his MRI results. The Orthapedist stated that she could do the repair of the rotator cuff tear, but since Oakdale prison does NOT allow inmates to receive or get physical theropy, that the Plaintiff would have to do and perform his own physical theropy on himself, or his shoulder would NOT get any better. Orthopedist had Plaintiff sign the consent form to have the surgery done, and again stated that she would reccamend in writing to Oakdale medical to have the Plaintiff be given a consult with a neurosurgon about his spinal problems as they should have done a year ago."

61. On 11/29/18, Plaintiff was taken to the Orthapedist in Leesville, this time he was seen by the Doctor in charge of the clinic, instead of being taken for the rotator cuff surgery. Plaintiff received another consult. Plaintiff asked the Doctor why he was having a consult instead of the surgery? The Doctor stated that, since the Oakdale medical staff took so many months without bringing the Plaintiff in for his surgery, that their clinic requires that they start the whole process over. Plaintiff explained all the delays Oakdale medical was causing him and that here it is almost 2 years after the x-ray showed the compression fracture of his T-12 verrtibra and they still haven't even allowed him to be seen by a neurosurgon about his spine. The Doctor was ver sympathetic and understanding and said he would AGAIN request that Oakdale medical have the Plaintiff seen by a neurosurgen for his severe spinal damage.

62. 11/30/18, Plaintiff saw FNP Thomas concerning his consult with the Orthapedist and explained what the Doctor had said and again explained his great deal of pain that he had NOT received any treatment for since 7/18/17 (a year and a half ago), when Dr. Alexander cut off all his pain medications in retaliation for filing a greivence against her. All in front of a chaperone and stated "you MUST do something about this , I can't even sit in a chair for more than a half hour without having to go lay down due to the pain or I get vertigo and nausous.

WHEREFORE ;

Plaintiff requests an additional $975,000.00 for compensatory damages, future loss of income , physical pain, and psychological distress for this "deliberate indifference" to his medical needs and his not being able to operate his 3 businesses when he gets out due to this injury not being given attention early on when something could have been done to correct it, this added supplement and additional complaint is hereby added to the original contract and complaint as per South Central Regional Offices decision, along with all relief due to Plaintiff whether specifically requested or not.

#4.

PLAINTIFF'S VERIFIED COMPLAINT  SUPPLEMENT # 4.

BREACH OF CONTRACT BY DEFENDANTS

ATTACHED TO AND CONTINUING ORIGINAL COMPLAINT

63. on 3/20/12, Plaintiff entered the FCI-1  Oakdale-1  FBOP- DOJ  prison compound in Oakdale, LA.. The Plaintiff was given an Inmate Handbook which is a written CONTRACT between the Plaintiff and the defendants. The Contract states among many other things as follows ;

1. Defendants are required to provide the Plaintiff with timely medical care, equal to the quality of care one would likely receive outside the FBOP-DOJ prison system.

2. Defendants are required to provide the Plaintiffs with quality timely Dental care, equal to the care one would likely receive outside the prison system.

3. Defendants are required to provide the Plaintiffs with quality notorious food 3 meals per day with a minimum of 15 minutes to eat each meal.

4. Defendants are required to provide the Plaintiffs with a SAFE and sanitary living quarter.

5. Defendants are required to treat the Plaintiffs with respect.

64. The Defendants were given legal notice and opportunity and their failure to perform their legal duty to answer  the Notice and opportunity is called "NOTICE - PRIVATE INTERNATIONAL REMEDY DEMAND" Hereinafter called Contract. see exhibit C-- 1, which was sent to Oakdale medical as an informal resolution.

65. The Party's consent whether express or implied binds the party to perform in accord with  the terms and conditions of the valid contract, between the parties, and their failure to comply places them at FAULT.

66. The Defendants were given notice of the Plaintiff's intent to contract (exhibit C-1) and given opportunity to answer and they failed to do so. The Defendants were entitled to another notice and opportunity to answer or specifically perform in accord with the terms and conditions within the valid contract between the parties. This 2nd. notice and opportunity is called or titled "NOTICE OF FAULT-OPPORTUNITY TO CURE" see exhibit C-2, which was sent to the Wardens office.

67. The Defendants failed to answer in time allowed and when they did answer they dissagreed with the Plaintiff and refused to honor their legal responcibilities in accord with the terms and conditions of the valid contract. Thus the Defendants are in DEFAULT. They are entitled to another notice and this notice is called "NOTICE OF DEFAULT - CONSENT TO DECREE".see exhibit C-3, which was sent to Wardens Office at Oakdale .

68. The NOTICE of DEFAULT- CONSENT TO DECREE gave the Defendants,Offerees, legaql notice and opportunity to cure the default by specifically performing in accord with the terms and conditions contained within the valid contract between the parties.

69. The final notice the Defendants are entitled to in equety contract, is a "DEMAND FOR SPECIFIC PERFORMANCE". This 4th and final notice , see exhibit C-4, informed the Defendants that their obligation to specifically perform is past due and owing and informed them that a law suit would rresult for their failure to perform timely, resulting in irreprable injury to the Plaintiff. This notice was also legally presented to the Defendants by the Clerk of the Court - United States District Court - for the Western District of Louisiana in the form of Motions for a Temporary Restraining Order and Motion for Preliminary Injunction along with multiple affidavits expressing the Allrgations Regarding the Parties and the Factual Alligations Regarding the Subject Matter. Defendants again failed to answer or perform or respond.

70. RESPONSIVE ANSWER IS REQUIRED :
Defendants, Offerees, are required by operation of law to provide Plaintiff, Offeror, with timely responsive answer as stated herein and in the Administrative Remedy Procedure, agreed to and required by the Defendants or Offerees. Or in the alterative specifically perform in accord with all terms and conditions contained within the NOTICE - INTERNATIONAL REMEDY DEMAND. Defendants,Offerees, must answer as follows ;

Defendants, Offerees, shall answer severally each and every allegation stated herein upon his/her/its/their solemn oath according to his/her/its/their utmost personal, first hand , actual knowledge a full, true, direct and perfect answer make to all the singular allegations as if the allegations were fully and particularly restated and Defendants, Offerees, were fully and distinctly interrogated under penalty of perjury and provide to Plaintiff, Offeror, with documented legal and equitable proof to the contrary for each and every allegation DENIED. Defendants, Offerees, responsive answer, as stated herein shall be answer under signature and seal and by verified affidavit.

71. "Liquidated Damages ;

Fault and or Default by Defendants, Offerees, shall constitute the informed consent, stipulation and agreement between the parties that Defendants, Offerees, shall timely pay Plaintiff, Offeror, liquidated damages in the amount of $2,725,000.00 per diem. as is the combined total of the original complaint added to the 3 Supplements and or Amendments to the original complaint, along with any and all attorney fees, paralegal fees, court costs, and other costs and any other relief that may be due whether specifically requested or not.

## . CONCLUSION;

Suppliment #1. Illegal medical co-pay fees charged to Plaintiff left Plaintiff with insufficient funds in his commissary account to purchase his doctor prescribed medications (many times), that should have been supplied by Oakdale pharmacy, thus forcing Plaintiff to go without. Injury and damages sought in this supplement complaint, in the amount of $200,000.00.

Supplement #2. "Withholding pain medications and pain management in retaliation for plaintiff's filing grievance concerning no medical care and what care is given is already 2 years late in coming." Injury and damages sought in this supplement complaint in the amount of $600,000.00.

Supplement #3. " Withholding ,denying medical care, and in a timely manner". Injury and damages sought in this supplemented complaint in the amount of $975,000.00.

Original complaint -- injury and damages sought in the amount of $950,000.00 added to the 3 supplements to original complaint comes to a total of $2,725,000.00 sought .

WHEREFORE ;  Plaintiff respectfully requests compensatory damages from the original complaint and the 3 supplements or amended complaints combined for a total of $2,725,000.00 ; plus costs and attorney fees to the extent authorized by law ; and any such other and further relief ass may be appropriate whether or not specifically requested.

)

)

BY ; _____          Date ;              2
                                              _____
Neil E. Havlik
FCI-1 Oakdale-1
PO Box 5000
Oakdale, LA. 71463