RECEIVED

APR - 6 2021

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT, LOUISIANA
BY_____

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| | | |
|---|---|---|
| NEIL E. HAVLIK | ) | CIVIL ACTION NO. 2;19-CV-01018 |
| | ) | |
| VERSUS | ) | JUDGE CAIN |
| | ) | |
| UNITED STATES OF AMERICA | ) | MAGISTRATE JUDGE KAY |

Plaintiff's Amendment to His Original Complaint With Exhibits Under
FRCP 15 (a) (1) and 12 (b) (e) or (f)

Comes now, Plaintiff, Neil Havlik, pro-Se, with his Amended Complaint with new counts 9 to 13,along with his Exhibits due to the following ;

Plaintiff may amend his complaint as a matter of course within 21 days service of the pleading or 21 days after service of a responsive pleading or motion, under FRCP 12 (a) (1). Leave of court to amend should be freely granted when justice so requires FRCP 12 (b) (e) or (f).

COUNT 9. Compensatory damages for FCI-1 Oakdale prison staff negligence in not providing the Plaintiff with access to programs, jobs, pay, and other accommodations, causing the Plaintiff extreme physical and psychological pain.

Complaint # 91. Due to negligence on the part of FCI-1 Oakdale prison staff, by not being compliant with the American's With Disabilities Act (ADA, Rehabilitation Act (RA), and the Civil Rights Act of Institutionalized Persons Act (CRIPA), they lack grab bars for the physically disabled, near toilets, showers, and walkways. The Plaintiff has filed multiple grievances and made sick-call requests to allow him to either leave to walk to the dining hall early or extra time to eat his meals, due to the facts that he uses a cane to walk and has an esophageal stricture in his throat which makes it difficult and time consuming to swallow his food and drinks, which both necessitate the disabled Plaintiff to require more time than the allowed 5 minuets (often less), to get to eat his meals, because he could not walk fast enough to the cafeteria. Prior to 2016, disabled inmates at FCI 1 Oakdale were

allowed what they called a (short line pass), which allowed them to leave their housing unit approximately 5 to 10 minuets before the other inmates. Since it is a good one quarter mile walk each way, to the cafeteria and back, that was at least a very good start at aiding the disabled inmates with this dilemma. However, FCI-1 Oakdale quit doing this in 2016, and ever since has simply told the Plaintiff t to tough it out or "deal with it".

Plaintiff has also had to limit himself to 4 showers per month, out of fear that he would fall. Further, Plaintiff has not been allowed to work, not been paid for his work when he was working, from 6/1/16 to 8/1/17, yet severely punished when he lacks the funds to pay his FRP payment by being negligently placed in the incorrect "FRP Status", against all of the FBOP-DOJ program statements and written rules, and denied participation and access to very necessary religious programs and Residential Reentry programs, that all other non-disabled inmates can participate in and have access to. All against both the (ADA), (RA), and the (CRIPA) and due to extreme negligence of the prison and it's staff. Thus, the above has/is still on a daily basis causing the Plaintiff extreme physical and psychological pain and distress for which the Plaintiff seeks an additional $200,000. in compensatory damages.

T state an (RA) claim the Plaintiff only needs to allege that 1.) he is a qualified person, 2.) with a disability, and 3.) FCI-1 Oakdale has/is denied him access to a program or activity due to his disability.

The Seventh Circuit wrote that a refusal to make reasonable accommodation is "tantamount to denying access", and "although the Rehabilitation Act does not expressly require accommodation, the Supreme Court has located a duty to accommodate in the statute generally".

The Plaintiff's disability includes a limitation on one or more major life activities. Incarceration in itself is not considered a program or activity, but the meals, showers,, Residential Reentry Programs, being able to purchase Dr. prescribed medications, being paid for his work when he had worked, being not restricted on his religious activities, not being denied a job, and thus able to pay his FRP payments, made available to ALL other persons ARE. Thus, FCI-1 Oakdale's refusal to accommodate the Plaintiff prevented him from accessing all of the above on the same basis as other non-disabled inmates. All due

To negligence of FCI-1 Oakdale prison staff. The Plaintiff has repeatedly asked to be transferred to a facility that can accommodate handicapped prisoners and/or is closer to his home and family, but they refuse to do it. The Courts have held that this is a plausible Rehabilitation Claim. The Courts have also held that the Plaintiff stated an Rehabilitation Claim for being denied work because he walked with a cane, despite meeting all the requirements for work/job.

A judge can not reject a complaint's plausible allegations by calling them "unpersuasive", Only a Trier of fact, after a trial can. See Richards v. Mitcheff, 896 F. 3d. (7th Cir. 2012).

COUNT 10. Compensatory damages for FCI-1 Oakdale prison staff negligence in failing to perform their duties, causing the Plaintiff to be denied his 6 months Halfway House and his 6 months Home Confinement, resulting in unnecessary continued time the Plaintiff was/is being held at the FCI-1 Oakdale facility, preventing him from getting his much needed back surgery and continuing his extreme pain and suffering as a result.

Complaint (92). Due to total negligence of Plaintiff's case mgr. (Mrs. Harrington), and counselor (Mrs. Smith), Plaintiff has not been put in for his Constitutional right to Halfway House and Home Confinement, as all other non-disabled inmates have access to and receive. As a result of this gross negligence, Plaintiff has not received his 6 months Halfway House guaranteed him by the 2nd Chance Act and so far has not been put in for his 6 months Home Confinement , guaranteed him under the 1st Step Act. Due to this gross incompetence and negligence on the part of FCI-1 Oakdale prison staff, Plaintiff has continued to suffer extreme pain , both physical and psychological as a result of being forced to wait to get his absolutely necessary back surgery, for which he seeks an additional $5000,,000. in compensatory damages. See Exhibits B-2 and B-3., for these extra 12 months confinement at FCI-1 Oakdale, instead of his Constitutional right to a full 12 months Halfway House and Home Confinement.

On or about 8/10/14, Plaintiff was presented with a Detainer Action Letter , See Exhibit B-3, stating that Plaintiff had an active warrant for his arrest in Morrilton, AR. For contempt of Court for not paying

his expired tag ticket in Oppello,AR. The letter was a copy of the one that was sent to the Morrilton, AR. Police Dept., notifying them to send a copy of the warrant should they want to file a Detainer against the Plaintiff. This was sent by a CSO Kelley from FCI-1 Oakdale prison. The Plaintiff's case mgr. Told the Plaintiff he needed to settle this warrant at that time as per state and federal law.

Plaintiff sent notices to the Morrilton Police Dept. and one to the Oppello Court Clerk, in Oppello, AR., telling them to either file the Detainer Letter sent them, extradite the Plaintiff within 30 days, or cancel the warrant. Plaintiff never heard back from either of them. See Exhibit B-3a.

On Oct. 2, 2019, Plaintiff had R and D run his name on NCIC, it showed NO warrants for the Plaintiff anywhere in the USA, since the warrant was canceled back in 2015, as a result of Plaintiff's Notice to them.

On or about September 2019, Plaintiff met with his case mgr. (Mrs. Richards), she asked him where he wanted to go to live when he got out? And wrote down the address, name of Plaintiff's son, his address and his son's phone number. The Plaintiff asked her to put him in for the full 6 months Halfway House allowed by the 2nd Chance Act and the full 6 months Home Confinement allowed by the 1st Step Act. She stated that she already put the Plaintiff in for both and that the Parole Officer in Little Rock, AR. Would contact the Plaintiff's son to come out and inspect the house, also that the electric and water must be turned on, for when he inspects it. Plaintiff explained to his case mgr. (Richards), that due to his severe impingement to his spinal cord, from being physically abused by 3 Cos in the SHU 3 years ago, that he wanted to get his back surgery to correct this as soon as possible., when he got his full 12 months Halfway House and Home Confinement in Little Rock,AR, to avoid being paralyzed from the neck down, (as the neurosurgeon stated would occur should he not have surgery soon). At this time, case mgr. told Plaintiff he needed to have a family member pay his expired tag ticket in Oppello,AR. From 10 years ago. Plaintiff had his son pay the ticket. On or about November 14, 2019, case mgr. Richards, went to another facility due to all the horrible complaints she had against her at FCI-1

5.

Oakdale. A new case mgr. (Mrs. Harrington), took her place. Plaintiff talked to her in mid Nov. of 2019,

and asked her how his applications for Halfway House and Home Confinement were being processed.

Mrs. Harrington stated that Mrs. Richards hadn't done anything and that she hadn't put the Plaintiff in

for anything. Plaintiff again, explained his desire to need to get his back surgery and to please go ahead

and file the necessary forms to get this accomplished. She said, she would.

In the last week of Dec. of 2019, Plaintiff asked Mrs. Harrington if she had any word on how his

halfway House/Home Confinement was going? And that he needed as much of both as possible so as to

get his back surgery done in Little Rock, AR., before he became paralyzed from the neck down, and in

order to have time to reenter socially and make use of the Home Confinement time as he would be laid

up for some time after the surgery. She said she needed written reasons to ask for this time that is

available to all other inmates with good conduct record. This statement by her/is a Bald-Faced Lie, but

rather than argue, Plaintiff simply typed her up a nice 2 page list of reasons, See Exhibit B-1, She said

Nothing about needing any proof that the expired tag ticket was paid the year before. On Jan. 2, 2020,

Plaintiff gave Harrington the typed up reasons for wanting what was his Constitutional right due him

and again, she said Nothing about needing any proof the ticket was paid See Exhibit B-1.

So, again with Nothing said about needing any proof the ticket had been paid, Plaintiff assumed it was

a settled matter by informing them verbally and telling her he had R and D run his name on NCIC,

which showed NO warrants or Detainers out on the Plaintiff, anywhere in the USA.

On Feb.. 13, 2020, Plaintiff had "Team", with case mgr. Harrington and she didn't even know who

the Plaintiff was. Plaintiff had to tell her his name and she stated that she had NOT done anything on

getting the Plaintiff his Constitutional right to Halfway House/Home Confinement and that she had

been TOO busy.

Plaintiff spoke to counselor Smith, on 2/27/20, and told her all the trouble he was having and she

said "she would take care of it". See Exhibit B-2.

6.

plaintiff spoke to counselor Smith again on 3/11/20, and she said that Plaintiff would have to provide proof the ticket was paid last year or her or Harrington would not do their jobs and put the Plaintiff in for his Halfway House/Home Confinement.

On 3/17/20, Plaintiff received 2 copies of judge's orders stating that his expired tags ticket in Oppello, AR. Had been paid in full, from his son (Nathan Havlik), who had paid the ticket in Sept. of 2019.

On 3/20/20, Plaintiff, Havlik, presented both copies of judge's orders to case mgr. Harrington and counselor Smith, Smith told Havlik she would take care of the situation.

It is obvious that both Harrington and Smith were intentionally lying to Havlik and that they had NO intention of allowing Havlik to even file the paperwork for his Halfway House/Home Confinement as is guaranteed him by the 2nd Chance Act and 1st Step Act. Intentionally violating both Acts of Congress. Both Federal criminal Offenses.

On 5/13/20, Unit mgr. McCollough, called me a "pain in the ass".

Plaintiff spoke to counselor Smith and case mgr. Harrington on 4/17/20, and again was told he would have to provide more proof his ticket had been paid, even though he gave them both copies and the color coded originals of the judge's orders stating Havlik's ticket was paid in full back in Sept. of 2019, they also stated his drivers license had been reinstated as a result of said ticket being paid. The judge's orders are color coded so as to make it impossible to alter or fraudulently reproduce them. Smith and Harrington then stated Havlik would have to have Oppello, AR. City clerk call R and D and inform a Mr. Gobert that the said ticket had been paid. See Exhibits G-1 and G-2.

On 5/1/20, Plaintiff spoke with Assistant Warden Mr. Stout, gave him his last 2 copies of the judge's orders, stating ticket was paid and explained his difficulties in getting counselor Smith and case mgr. Harrington to do their jobs and put him for his Constitutional rights to Home Confinement, since their negligence had already caused Havlik to loose his 6 months of Halfway house. Assistant Warden

7.

Stout, said "he would go to R and D and find out what was going on". Then he ordered Harrington to put in my paperwork. See Exhibit C-1.

On 5/5/20, case mgr. Harrington had me sign paperwork to get my Home Confinement under the 1st Step Act. I didn't have my glasses with me so I could not read it. A few days later, on 5/15/20, Harrington called me into her office and said I had been denied , that Arkansas did not accept sex offenders. I asked her for a copy of the denial, she refused, I asked her if she would at least tell me who refused me, was it a Halfway house, a probation officer, or some other state official or agency? She again, refused to tell me. I was able to get a copy of the paperwork she (claims to have put in for me), and it states that she put me in for Residential Reentry Center Placement, NOT for Home Confinement. Residential Reentry is Halfway House placement. (of which Havlik had already lost and been denied his Constitutional right to, under the 2nd Chance Act), due to Harrington and Smith's negligence and intentional denial of Havlik's right to. To ignore and disobey an Act of Congress is a serious Federal Crime, along the lines of treason.

On 5/14/20, Plaintiff spoke to his son (Nathan Havlik), (phone call was recorded by BOP), and was informed that Mrs. Renee McGee, the Oppello city clerk, got a Mr. Gobert on the phone and was told that Harrington LIED and that he needed NO further proof of ticket being paid.

Later the day of 5/15/20, Havlik was telling an attorney on the phone, that he had been lied to repeatedly by Smith and Harrington and that she had (in my opinion), intentionally put me in for Halfway House instead of Home Confinement, (if she really put me in for anything), and that the paperwork she claims to have filed does NOT state Home Confinement, that I am 100% disabled, and 68 years old (retired), on Social Security when I get out. Instead, she put under "Employment", to be determined and no restrictions on WORK". Harrington was in another room listening in on my conversation and called me into her office to inform me that "she refuses to have anything to do with me in the future" As a result, Plaintiff has NO way to start or complete his Administrative Remedy

8.

process concerning this issue and additional COUNT to his "Bivins" lawsuit. Also, due to the fact that when Havlik, tried to ask Harrington a question that day, Unit mgr. Mr.. McCollough, came up and started ranting and raving, saying "I'm not going to play FUCK BOY games with you". (what ever that means),? "I said excuse me?", He said "get out of here we are done with you".

7/23/20, Plaintiff Havlik, had "Team", Harrington tried to get him to sign some papers, He assumed were her copy of his "Team" meeting papers that she handed him, (I have learned the hard way, not to trust her), so I looked at what she wanted to get me to sign. On the 1ˢᵗ page it has a section that states "Havlik refused to be quarantined for the COVID 19 virus", as the reason he was denied Home Confinement. I asked her what this was? She said "Oh, we just put that on all of them". I said, "you know that's a lie and I won't sign it and can I have a copy of it? She said NO, it goes in your Central file". So, I asked her "did you put me in for my 6 months Home Confinement under the 1ˢᵗ Step Act,as I asked you to 4 months ago?"

She said "NO, I put you in for Halfway House". I asked "why, you knew I asked for my Home Confinement". I said " you and I both know this is a lie". She said " the 1ˢᵗ Step Act says Sos are not eligible for Home Confinement". I said you and I both know that is a lie. She said you can file a grievance on me if you like". I then looked at the last page of what she handed me, which is a Sentence Computation Data Sheet that lists everything about my offense, Judge, receipt of child porn offense, sentence, court, time served, among other info and at the top it clearly states "Home Confinement Eligibility Date is 6/2/20.

\   Now, if the 1ˢᵗ Step Act made SOs ineligible, why does the Data Sheet state this? Good Question! Harrington is trying to falsify my Central file paperwork to cover her ass,, since she found out I have added her fraud and denying me my constitution all rights to my lawsuit.

8/11/20, Harrington threatened to write me an incident report for having my "LEGAL WORK" sent through the U.S.Mail marked as is "Legal Work", so I am listening to your phone conversations with

9.

your attorneys.

COUNT 11.    DENIAL OF RIGHT TO FILE GRIEVANCE

Complaint 93. To file a grievance in the federal prison system, (Administrative Remedy Process), requires that both case mgr. And Unit mgr., Harrington and McCollough, have to sign off on any and all grievances inmates wish to file. Plaintiff claims both physical and psychological damages due to case mgr Harrington and Unit mgr., McCollough repeatedly denying Havlik his Constitutional right to file for his Compassionate Release under the 1st Step Act of 2019. and to file for his Halfway House (6 months of), Home Confinement granted him under the 1st Step Act of 2019. Violating both Acts of Congress which are part of the Constitution when enacted, are serious federal crimes, along the lines of Treason. Upon Oakdale prison staff violating these Acts, they are breaking the law which is NOT part of their job description, for which they loose any and all immunity from both prosecution and personal law suits.

1.Denial of Plaintiff's Constitutional Right to file a grievance and to be free from Retaliation for doing so, was yet again, confirmed by our Supreme Court in 2017, and decided to be a Constitutional Right. The Warden is responsible for the illegal actions of the prison staff due to his failure to hire staff members who are literate and properly trained and competent enough to do their job they were hired to do, without breaking the law and denying the inmates their Constitutional Rights.

When Unit mgr. McCollough rcently took over the position of Unit mgr., of our Vernon -1 Unit, he enacted his Own new rule concerning the inmates filling of grievances. Instead of following the previous Administrative Remedy Process (according to FBOP-DOJ program statements), and all legal written rules of first filing an Informal Resolution and then a few days later allowing the inmates to file their 2nd filing, (a BP-9 form), which goes to the Warden's office to be answered by the Warden, (important, remember, an inmate is Only allowed 20 days to file the blue BP-9 with the Warden's office , from the day the incident took place, or he looses his right to file a grievance concerning the incident

forever. The new policy McCollough enacted and case mgr. Harrington and counselor Smith now    10
follow, requires that inmates now must wait 30 days from the day submit their Informal Resolution, before they are allowed to file the blue BP-9 form to the Warden. The obvious result, is that the BP-9 form has exceeded the maximum 20 days allowed for it's filing from the day of the incident, by the Administrative Remedy Process, thus , it has "Timed Out", and can NOT be refiled. Plaintiff was unable to file his grievances due to the above. See Exhibits B-2, 3, 3a, and C-2 and 3. To get his right to Halfway House and Home Confinement. Case mgr. Harrington, Unit mgr. McCollough, and Counselor Ware, denied the Plaintiff his Constitutional Right to file for Compassionate Release, under the 1ˢᵗ Step Act of 2019. The 1ˢᵗ Step Act of 2019, clearly states that inmates NO longer Must be expected to die within 18 months in order to be eligible for Compassionate Release. It also clearly states that our Unit mgr., case mgr., and counselor are REQUIRED to aid inmates (who are disabled), in writing and filing their requests for Compassionate Release, under the 1ˢᵗ Step Act. The Plaintiff tried to fille for Compassionate Release on 4/13/20, and was told by case mgr. Harrington, Unit mgr. McCollough, and counselor Ware that he had to file an Informal resolution first, than wait 30 days before they would allow him to file his request. Then on 4/16/20, they gave him their answer to his Informal Resolution, stating that he is NOT expected to die within 18 months and could Not file his request as a result. See Exhibits C-5, 5a, and 5b.

Unit mgr. McCollough,, case mgr.,, Harrington, and counselor Smith, by denying the Plaintiff his Constitutional Rights to file for Compassionate release, grievances, Halfway House(6 months), under the 2ⁿᵈ Chance Act,, and 6 months Home Confinement under the 1ˢᵗ Step Act, has caused the Plaintiff, Havlik, to remain at FCI-1 Oakdale 12 full months Longer than he would have had to , should they have done their jobs ( that the taxpayers pay them to do), causing the Plaintiff to suffer extreme physical and psychological pain and distress.  Ignorance of the law is NO excuse.

Complaint No; 94. Unit mgr.. McCollough, case mgr.., Harrington, and counselor Smith, have continued to incorrectly place the Plaintiff in "Refused" Financial Responsibility Status(FRP),instead

11.

of (exempt TMP), while totally disregarding all FBOP-DOJ written rules and program statements that concern this matter. Again, this is out side the boundaries of their job descriptions, (to not follow their own FBOP-DOJ rules). Thus, they loose any and all government immunity and protection from prosecution and personal liability lawsuits. Their intentional disregard for their own rules and the Plaintiff's need to be able to purchase medications from the commissary due to their incorrectly placing the Plaintiff in "Refused status", caused the Plaintiff unnecessary pain and suffering.

Plaintiff had "Team meeting", with case mgr. Harrington on May 28, 2020, at 11;30 am. Plaintiff Havlik, asked her why his living skills and program participation both went from 4 points (good), each down to 0 points (poor), two weeks after she took over for the old case mgr. Richards? Harrington said "well you are in "Refused "status, so I'm scoring you this way to prevent you from getting your Home Confinement",. I said "you made this decision on your own before you even knew who I was and had to ask me my name"? She said "yes",. Plaintiff has a Constitutional Right under the 1ˢᵗ Step Act to 6 months Home Confinement. Unit mgr. McCollough has to sign off on case mgr. Harrington's FALSE scoring of Plaintiff's living skills and program participation. They both know Havlik's multiple spinal fractures, spinal cord impingement, and torn rotator cuff make it impossible for him to participate in taking programming classes and holding a job of any kind. Yet, they still ignore All their own FBOP-DOJ written rules and program statements and continue to place Havlik in "Refused Status", instead of "Exempt status" as per their own program statements and written rules. Then they impose all kinds of punishments and restrictions against him for being disabled and unable to work. This "Retaliation" for his being disabled has caused him to loose his Constitutional right to participate in various religious programs that other non-disabled inmates participate in and is a violation of the ADA, RA, and CRIPA among others.

COUNT 12.   REFUSAL OF MEDICAL CARE AND TREATMENT

Complaint No. 95. FCI-1 Oakdale Health Services Doctors – Griffin,Alexander, FNP Nurses –

12.

Thomas and Laws, along with all previous FNP- MLPs, have repeatedly refused Plaintiff treatment and medical care for his Rheumatoid and Psoriatic Arthritis for the past 10 years. The only treatment they have allowed or provided is Tylonal, Ibuprofen, band various anti-depressants. They consistently refused to give him one of the dozens of FDA approved drugs that are specifically for the treatment of Arthritis, that STOP and Prevent the IRREVERSABLE joint damage caused by untreated Arthritis, (such as Humera,Xeljanz, Otexla, or Jarize. Plaintiff's join damage has progresses over the past 3 years to where his knees constantly give-out, and it has become extremely difficult to write due to the irreversible joint damage to his finger joints. Doctor Griffin, on 3/20/20, prescribed an anti-depressant called Oxcargazepine and said if I would try it for 30 days he would prescribe Humera for my Psoriatic and Rheumatoid Arthritis and that Regions would approve it. I tried it for the 30 days then made sick-call on 4/21/20, and spoke to9 FNP Ardain, who was extremely rude and said"well, your getting Tylenol and Ibuprofen, what more do you want?" I said, "I don't want more pain meds. Or anti-depressants, I want one of the FDA approved Arthritis medications, other inmates here get Humera, why am I being denied medical care for my Arthritis"? I am not going to mention the names of inmates receiving Arthritis meds. Here in order to prevent Oakdale Health Services staff from retaliating against them, which is their usual reaction. See Exhibits E-1.

Plaintiff then was evaluated at sick-call on 5/18/20, by FNP Laws, she refused to discuss my Arthritis so I asked her to update my medical duty status to reflect the truth, (that I am unable to work due to multiple spinal fractures, spinal cord impingement, and torn rotator cuff), she refused. See Exhibit E-2 and 3. Again, they deny me medical care and treatment for both Rheumatoid and Psoriatic Arthritis.

COUNT 13.   Complaint No; 96.  FCI-1 Oakdale Health Services staff has/is still denying the Plaintiff medical care and treatment for his 3 hernias for the past 10 years. Plaintiff has 3 hernias which puts pressure on his esophagus causing an Esophageal Stricture that almost killed him in 2015.

13.

The other hernias in his belly, allows his intestines to knot up,, causing very serious digestive restrictions. Plaintiff has repeatedly sought medical care and treatment and surgery, to repair his hernias and each time has been told , that "he won't get that done while at FCI-1 Oakdale, by Oakdale Health Services staff. (Dr. Griffin,Dr. Alexander. All the FNP nurses, and LPN nurses. Plaintiff Havlik, has seen at least 25 other inmates go out and have surgery done to repair their hernias, (which were much less severe than his), during the past 2 years. On 3/20/20, Havlik, asked Dr. Griffin if this was their way of retaliating against him for filling grievance, since cutting off Havlik's pain medications 3 years ago for filing grievances didn't stop him from from continuing to file grievances? See medical records.

## AMENDED PARTIES

7. MR. MCCOLLOUGH, UNIT MGR., OFFEREE, OFFICIAL CAPACITY.
Mr. McCollough, individual capacity, employed at FCI-1 PO Box 5000,Oakdale,LA.71463

8. MRS. HARRINGTON, CASE MGR. OFFEREE, OFFICIAL CAPACITY
Mrs. Harrington, individual capacity, employed at FCI-1,, PO Box 5000, Oakdale,LA.71463.

9. MRS. SMITH, COUNSELOR,OFFEREE,OFFICIAL CAPACITY.and
Mrs. Smith, individual capacity, employed at FCI-1,PO Box 5000,,Oakdale, LA. 71463 and

10. MRS. LAWS,FAMILY NURSE PRACTISHIONER, OFFEREE, OFFICIAL CAPACITY AND
Mrs. Laws, individual capacity, employed at FCI-1, PO Box 5000, Oakdale,LA 71463.

WHEREFORE; Plaintiff respectfully requests this Court to find judgment in his favor on this lawsuit for the full amount of damages sought of $2,750,000.00 plus the full amount of damages for his Amended Complaints and Counts in the additional amount 0f $270,000.00, for a grand total of $3,000,000.00. Plus attorney fees,paralegal fees, inmate helper fees, and any and all other expenses involved in this litigation, whether asked for or not, that may be due the Plaintiff.

Date ; April 5, 2021

Respectfully Submitted
BY ;
Neil E. Havlik
30 W. Thompson Rd.
Perry, AR. 72125