## UNITED STATES DISTRICT COURT
### WESTERN DISTRICT OF LOUISIANA
### LAKE CHARLES DIVISION

NEIL E HAVLIK #24985-009                CASE NO.  2:19-CV-01018

VERSUS                                  JUDGE JAMES D. CAIN, JR.

ROD MYERS ET AL                         MAGISTRATE JUDGE LEBLANC

## MEMORANDUM RULING

Before the Court is "Individual Defendants' Motion to Dismiss or in the Alternative for Summary Judgment" (Doc. 127) by Defendants, Rod Myers, Dr. Joel Alexandre, Nurse Mary Thomas, and Correctional officers Joel Broussard, Brandon Fontenot, and Jude LeDoux.  These Defendants move to dismiss Plaintiff, Neil E. Havlik's Supplemental and Amending Complaint[1] pursuant to Federal Rule of Civil Procedure 12(b)(6), with prejudice, or alternatively, grant summary judgment in their favor pursuant to Federal Rule of Civil Procedure 56. Specifically, Defendants seek to dismiss: (1) all but one of Plaintiff's *Bivens* claims for failure to exhaust administrative remedies; (2) Plaintiff's *Bivens* claim against all Individual Defendant; and (3) all Individual Defendants due to qualified immunity.

## FACTUAL STATEMENT

On January 4, 2017, Plaintiff was being led downstairs to be escorted to the Special Housing Unit ("SHU").[2]  Prior to being led downstairs, one of the officers told Plaintiff to

---

[1] Doc. 92.
[2] Fourth Amended Complaint, ¶ IV(A), Doc. 92.

put his hands behind his back to be handcuffed.[3]  Plaintiff complied. Plaintiff alleges in his complaint that he is usually handcuffed in front so he can use his cane.  He also alleges that the officers forcefully grabbed his hands and applied the handcuffs with unnecessary force, after which, one of the officers placed the cane in Plaintiff's hands behind his back and pushed Plaintiff toward the top step of the stairs.[4]  Plaintiff alleges he stumbled forward and Officers LeDoux, Fontenot and Broussard pulled Plaintiff upright by his arms, rotating Plaintiff's arms upward behind his back.[5] Plaintiff alleges that the overextension of his arms caused him to lose his balance at the top of the stairs.[6] The Officers pulled Plaintiff down the stairs, forcing Plaintiff forward by pulling his arms even more and forcing Plaintiff down the stairs.[7] Plaintiff screamed in pain, but the Officers continued dragging Plaintiff down the stairs by his arms.[8] Plaintiff was then placed in a cell, his cane taken away, and he was uncuffed.[9]

Plaintiff alleges that he reported a serious injury but was not seen until four (4) days later.[10] Among other injuries, Plaintiff suffered a torn rotator cuff and broke his back in at least two (2) places.[11]  Plaintiff alleges he was seen by FNP Mary Thomas who did not schedule any x-rays until three (3) weeks later.  Plaintiff alleges that the February 15, 2017, chest x-ray showed a compression fracture of Plaintiff's T-12 vertebra.[12] Plaintiff was seen

---

[3] *Id.*
[4] *Id.*
[5] *Id.*
[6] *Id.*
[7] Fourth Amended Complaint, ¶ IV(A), Doc. 92.
[8] *Id.*
[9] *Id.*
[10] *Id.* ¶ IV(B).
[11] *Id.*
[12] *Id.*

against in March 2017 by FNP Thomas.  He inquired as to what the February 15, 2017, x-ray revealed; allegedly, FNP Thomas told him there was no x-ray in his file.

Plaintiff alleges he continued to complain of back and shoulder pain, making two (2) sick-call visits per month. Plaintiff alleges that his medical care was intentionally delayed, including not being seen by an Orthopedist until 10 months after the January 5, 2017, incident.[13] Plaintiff was seen by an Orthopedist in October 2017 who diagnosed a compression fracture of the T-12 vertebra and a torn right shoulder rotator cuff.[14]

Plaintiff complains about the lack of accommodations after he suffered his injuries, such as a reasonable mattress or pillow, and/or a lift or other device suitable to provide safe movement. He also complains of a loss of personal property by being charged for the sick-call visits and co-pays for his chronic care.  Plaintiff also complains that he was being threatened by Dr. Joel Alexandre for filing a grievance, and that Dr. Alexandre retaliated against him by withholding his pain medication.  Finally, Plaintiffs alleges that Warden Myers is responsible for his injuries because he failed to properly hire, train, and supervise the correctional officers and staff. He also alleges that Warden Myers is liable for failure to take reasonable action to prevent further harm, failure to establish and enforce sufficient rules for the protection of inmates and the protections of inmates' civil rights, as well as the failure to ensure Plaintiff received proper medical care.[15]

---

[13] *Id.*
[14] *Id.*
[15] Amended Complaint, ¶ (B) 21.

Plaintiff asserts claims of willful and negligent conducts against Defendant, acting individually and in concert,[16] including intentional and negligent infliction of physical injury, physical abuse of an elderly and disabled inmate, refusal of medication and medical care, intentional delay of medical care, failing to train and supervise employees, negligent screening and hiring of employees, violating Plaintiff's constitutional rights, violation of Plaintiff's rights under state and federal law, deliberate indifference, cruel and unusual punishment, and retaliation.

## RULE 12(b)(6) STANDARD

Rule 12(b)(6) allows for dismissal when a plaintiff "fail[s] to state a claim upon which relief can be granted." When reviewing such a motion, the court should focus on the complaint and its attachments. *Wilson v. Birnberg*, 667 F.3d 591, 595 (5th Cir. 2012). The court can also consider documents referenced in and central to a party's claims, as well as matters of which it may take judicial notice. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000); *Hall v. Hodgkins*, 305 Fed. App'x 224, 227 (5th Cir. 2008) (unpublished).

Such motions are reviewed with the court "accepting all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiff." *Bustos v. Martini Club, Inc.*, 599 F.3d 458, 461 (5th Cir. 2010). However, "the plaintiff must plead enough facts 'to state a claim to relief that is plausible on its face.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

---

[16] *Id.* ¶ C.

(2007)). Accordingly, the court's task is not to evaluate the plaintiff's likelihood of success but instead to determine whether the claim is both legally cognizable and plausible. *Lone Star Fund v. (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

## SUMMARY JUDGMENT STANDARD

A court should grant a motion for summary judgment when the movant shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56. The party moving for summary judgment is initially responsible for identifying portions of pleadings and discovery that show the lack of a genuine issue of material fact. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). The court must deny the motion for summary judgment if the movant fails to meet this burden. *Id*.

If the movant makes this showing, however, the burden then shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (quotations omitted). This requires more than mere allegations or denials of the adverse party's pleadings. Instead, the nonmovant must submit "significant probative evidence" in support of his claim. *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249 (citations omitted).

A court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). The court is also required to view all evidence in the light most favorable

to the non-moving party and draw all reasonable inferences in that party's favor. *Clift v. Clift*, 210 F.3d 268, 270 (5th Cir. 2000). Under this standard, a genuine issue of material fact exists if a reasonable trier of fact could render a verdict for the nonmoving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

## LAW AND ANALYSIS

Individual Defendants, Rod Myers, Dr. Joel Alexandre, Nurse Mary Thomas and Correctional Officers ("CO") Joel Broussard, Brandon Fontenot, and Jude LeDoux, seek dismissal of Plaintiff's *Bivens* claims because: (1)Plaintiff failed to exhaust his administrative remedies on all but one *Bivens* claim prior to filing this lawsuit; (2) Plaintiff failed to state a *Bivens* claims against any individual Defendant; and/or (3) all Defendants are entitled to qualified immunity.

Plaintiff asserts the following five distinct claims: (1) intentional mistreatment or harm by the COs during his escort to the SHU on January 4, 2017; (2) improper medical care; (3) loss of property;[17] (4) retaliation;[18] and (5) negligent hiring, training, and supervising by Warden Myers.

Because both parties have submitted and rely upon evidence outside the pleadings, the Court will address this Motion as a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure.

---

[17] By improper charging of co-pays and sick call visits.
[18] By Dr. Alexandre for withholding Plaintiff's pain medication.

*Bivens claim and waiver of defense as to exhaustion of administrative remedies*

Defendants move to dismiss each of Plaintiff's *Bivens* claims, in their individual capacity. Plaintiff agrees that his *Bivens* claims against Warden Myers for negligent hiring, training and supervision of COs, and his property loss claims should be dismissed.[19]

Defendants advise the Court that Plaintiff appears to conflate his *Bivens* claims against the Individual Defendants with his FTCA claims against the United States,[20] and as such any arguments in opposition to Plaintiff's FTCA claims against the United States are inapplicable.

Plaintiff argues that the Individual Defendants have waived their defense of failure to exhaust administrative remedies because the lawsuit has been pending for years.[21] However, as noted by Defendants, this lawsuit is complex, and in addition to numerous requests for extensions by both parties,[22] Plaintiff has filed numerous Amended Complaints,[23] and after having retained counsel, Plaintiff, filed an Amended Complaint naming additional Defendants.[24] Defendant Nurse Mary Thomas and the United States filed their answer on February 9, 2023, and asserted their affirmative defense of failure to exhaust administrative remedies for the *Bivens* claims.[25] The remaining Individual Defendants were named, served and required to file responsive pleadings no later than June

---

[19] Opposition, p. 4, Doc. 147.

[20] Plaintiff has asserted distinct *Bivens* claims against the six individual Defendant and separate FTCA claims against the United States. Defendant informs the Court that it intends to address Plaintiff's *Bivens* claims in a separate motion.

[21] Plaintiff filed this lawsuit on August 5, 2019.

[22] The Court notes that this lawsuit was originally filed by Plaintiff, *pro se*, and much later, Plaintiff, with the assistance of the Magistrate Judge, was able to retain counsel.

[23] Docs. 73 and 92

[24] See Doc. 92 filed October 16, 2023.

[25] Doc. 78.

2, 2024.[26] Considering all, the Court finds that the Individual Defendants[27] were not dilatory and have not waived this defense.

*Bivens claims and failure to exhaust administrative remedies*

As set forth in 28 C.F.R. §§ 542.10 - 542.19, the BOP has available to all inmates an efficient, three-step administrative remedy process. This administrative process requires an inmate to first file a request for an administrative remedy with the warden of the institution where the inmate is confined. 28 C.F.R. § 542.13. The warden then has twenty days to respond to the formal request. *Id.* § 542.18. If the inmate is not satisfied with the response, he can appeal to the BOP Regional Director. *Id.* § 542.15(a). The appeal must be decided within thirty days. *Id.* § 542.18. The final step in the administrative remedy process is an appeal to the BOP General Counsel. *Id.* § 542.15(a). Any such appeal must be decided within forty days. *Id.* § 542.18. In such requests that are deemed emergency in nature, an even faster administrative remedy process is available. *Id.* In either case, however, administrative remedies have not been exhausted until the inmate's claim has been filed at *all* levels and has been denied at *all* levels. *Id.* § 542.15.

The purpose of this exhaustion requirement is to reduce the quantity and to improve the quality of prisoner suits. *Porter v. Nussle*, 534 U.S. 516, 524 (2002). The requirement is designed to meet this purpose by: (1) allowing prison officials an opportunity to satisfy the inmate's complaint, thus potentially obviating the need for litigation; (2) filtering out

---

[26] Doc. 125.
[27] And the United States.

some frivolous claims; and (3) creating an administrative record that facilitates review of cases that are ultimately brought to court. *Id*. at 525.

The Prison Litigation Reform Act (PLRA) requires exhaustion of the available remedies. *See* 42 U.S.C. §1997(e)(a); *see also Booth v. Churner*, 532 U.S. 731 (2001), *Porter v. Nussle*, 534 U.S. 516 (2002), and *Clifford v. Gibbs*, 298 F.3d 328, 331-332 (5th Cir. 2002) (holding that the Prison Litigation Reform Act's exhaustion requirement is mandatory, not discretionary, and the prisoner must exhaust). Inmates are required to exhaust administrative remedies irrespective of the forms of relief sought and offered through administrative sources. *Booth*, 532 U.S. at 741 n.6. This exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes. *Porter*, 534 U.S. at 532. More recently, the Supreme Court held that "[t]here is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007).

The Fifth Circuit takes a strict approach to exhaustion and mere substantial compliance does not satisfy exhaustion, but the administrative remedies must be available. *Brown v. Wilson*, 822 Fed.Appx. 299, 300 (5th Cir.2020) (unpublished opinion) *citing Davis v. Hernandez,* 798 F.3d 290, 294 (5th Cir.2015). Exhaustion is mandatory in a *Bivens* case. *Flores v. Lappin*, 580 Fed.App'x. 248, 249 (5th Cir.2014). Moreover, an inmate's failure to exhaust the administrative remedies made available by the BOP at the time of filing a complaint is sufficient to support dismissal of the action. *Wendell v. Asher*, 162 F.3d 887, 890-91 (5th Cir. 1998).

Because exhaustion is an affirmative defense it must be raised in a motion for summary judgment. *Dillon v. Rogers*, 596 F.3d 260, 272, (5th Cir. 2010). An affirmative defense may be raised in the initial pleading when that pleading is a motion for summary judgment. *Funding Systems Leasing Corp. v. Pugh*, 530 F.2d 91, 96 (5th Cir. 1976).

Defendants submit summary judgment evidence that all (Claims Nos. 891455, 894132, 905327, 905329 913302)[28] but one of Plaintiff's claims (Claim No. 921382) remain unexhausted and are subject to dismissal. As to Claim No. 921382, Defendants concede that this claim for improper medical care was properly exhausted through the mandatory administrative process.[29] Defendants seek to have all of Plaintiff's claims against them, individually, dismissed other than Plaintiff's claim for improper or inadequate medical care (Claim No. 921382).[30]

Plaintiff argues that in his case, exhaustion may be unnecessary because it is futile, suggesting that the agency decision makers are biased or have already determined the issue. Plaintiff also argues that exhaustion is not necessary where the administrative process is incapable of granting relief or where pursing agency review would subject a plaintiff to undue prejudice. *United States v. Zukerman*, 451 F.Supp.3d 329, 332-33 (S.D.N.Y. 2020). Exceptions to the exhaustion requirement are appropriate where the attempt to exhaust such remedies would itself be a patently futile course of action. *Fuller v. Rich*, 11 F.3d 61, 62 (5th Cir. 1994).

---

[28] Defendants' exhibit A, Att. 1.
[29] Defendant's exhibit A, Att. 2.
[30] *Id.*

Plaintiff informs the Court that many of his complaints were rejected the same day they were appealed, which demonstrates the lack of any meaningful response to Plaintiff's valid complaints. Plaintiff complains that Defendants have admitted no wrong for denying him medical care for ten months and breaking his back and hurting his shoulder.

Plaintiff relies on the complete administrative record. A review of the administrative process record shows that Plaintiff filed 63 grievance submissions from July 27, 2012, until November 16, 2020.[31]

The Court has reviewed the filing dates as well as decision dates. It appears that Claim No. 891455 for complaints against staff, filed on January 30, 2017, was rejected and refiled on July 11, 2017, and rejected again on July 26, 2017.[32]

As to Claim Nos. 905327 and 905329 for alleged improper medical care and staff complaints, Plaintiff filed two separate claims on June 14, 2017.[33] These claims were rejected on June 22, 2017, and appealed on July 28, 2017. Here, the claims were rejected on July 28, 2017, and again on November 17, 2018.[34] Claim No. 90537 was rejected at the first level of review on June 22, 2017, and appealed to the second level on July 28, 2017, and rejected on July 28, 2017, and again on December 1, 2017.

Claim No. 913302 for improper medical care and staff complaints was filed on August 24, 2017, and was rejected at the first level on September 11, 2017; Plaintiff filed

---

[31] *Id.* Doc. 127-2, p. 8.
[32] Defendant's exhibit A, Att. 1.
[33] *Id.*
[34] *Id.*

his second level appeal on October 10, 2017, which was rejected the same day and again on November 2, 2017, and again on December 23, 2017.

Claim No. 921382, filed on November 13, 2017, for improper medical care was rejected on November 22, 2017, appealed to the second level on December 13, 2017, to be rejected on January 3, 2018.[35] Plaintiff appealed to the third and final level on April 26, 2018, which was rejected on May 25, 2018.[36]

Defendants argue that Plaintiff has not submitted any summary judgment evidence to create a genuine issue of material fact as to the exhaustion requirement concerning his claims for (1) intentional mistreatment or harm by the COs during his escort to the SHU on January 4, 2017; (3) loss of property; (4) retaliation; and (5) negligent hiring, training, and supervising. After having reviewed the administrative record and considering the applicable law, the Court agrees with Defendant that all but one of the claims will be dismissed without prejudice for failure to exhaust administrative remedies. Moreover, Plaintiff has failed to prove that completing the administrative process was futile. It appears to the Court that Plaintiff was repeatedly filing the same complaint orbiting the January 4, 2017, incident, and the alleged failure of Defendants to provide proper medical care for his injuries. However, the Court finds that Plaintiff has properly exhausted his claim for improper medical care—Claim No. 921382.

---

[35] *Id.*
[36] *Id.*

*Dismissal of Plaintiff's Bivens claims against Individual Defendants, Myers, Broussard, Fontenot, and LeDoux, with prejudice*

Individual Defendants Myers, Broussard, Fontenot, and LeDoux moves to have the *Bivens* claims made against them dismissed with prejudice.

In order to support a *Bivens* claim, the act or omission alleged must rise to the level of a constitutional violation. *Seigert v. Gilley*, 500 U.S. 226 (1991). In *Ziglar v. Abbasi*, the Supreme Court dramatically narrowed the circumstances in which a *Bivens* claim may be pursued. 137 S. Ct. 1843, 1857 (2017). The Court explained that it had recognized a *Bivens* remedy in only three cases: (1) *Bivens,* 403 U.S. at 389, itself, which involved a Fourth Amendment claim of excessive force pursuant to a warrantless search; (2) *Davis v. Passman*, 442 U.S. 228 (1979), which allowed a Fifth Amendment equal protection claim against a Congressman for gender discrimination; and (3) *Carlson v. Green*, 446 U.S. 14 (1980), which permitted an Eighth Amendment claim for failure of prison medical staff to provide adequate medical treatment. "These three cases – *Bivens*, *Davis*, and *Carlson* – represent the only instances in which the Court has approved of an implied damages remedy under the Constitution itself." *Abbasi*, 137 S. Ct. at 1855; *see also Vanderklok v. United States*, 868 F.3d 189, 198 (3d Cir. 2017). "[E]xpanding the *Bivens* remedy" beyond these contexts "is now a disfavored judicial activity." *Abbasi*, 137 S. Ct. at 1857.

Here, Plaintiff has asserted that (1) the COs (Broussard, Fontenot, and LeDoux) intentionally mistreated or caused harm during their escort of Plaintiff on January 4, 2017, causing injury to his shoulder and back (2) a claim for improper medical care for Plaintiff's chronic care and sick call visits, (3) loss of property for charging co-pays, (4) Dr.

Alexandre's retaliation, and (5) Warden's Myers' negligent hiring, training and supervision of CO's and staff.

Defendants argue that the only proper *Bivens* claim would be for improper medical care under the Eighth Amendment, as noted by the above jurisprudence. The Court agrees.

"A prison official violates the Eighth Amendment's prohibition against cruel and unusual punishment when his conduct demonstrates deliberate indifference to a prisoner's serious medical needs, constituting an "unnecessary and wanton infliction of pain." *Easter v. Powell*, 467 F.3d 459, 467 (5th Cir. 2006).

Deliberate indifference is a high bar, surpassing negligence and gross negligence. *Id.* (citing *Brown v. Bryan Cnty., Okla.*, 219 F.3d 450, 460–63 (5th Cir. 2000)). As the Fifth Circuit recently explained:

> We have described deliberate indifference as "an extremely high standard to meet." *Domino v. Tex. Dep't of Crim. Just.*, 239 F.3d 752, 756 (5th Cir. 2001). A detainee can establish a jail official's deliberate indifference by showing that the official "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *See Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985). Deliberate indifference can also be shown where a jail official knows that a detainee faces "a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *See Farmer v. Brennan*, 511 U.S. 825, 847, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). On the other hand, "[u]nsuccessful medical treatment, acts of negligence, or medical malpractice do not constitute deliberate indifference." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006).

*Ford v. Anderson Cnty., Tex.*, 102 F.4th 292, 307 (5th Cir. 2024). Medical records of sick calls, examination, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference. See *Mendoza v. Lynaugh*, 989 F.2d 191, 193-95 (5th Cir. 1993).

"A serious medical need is one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006).

The essentials elements of an Eighth Amendment claim are both subjective and objective. The objective component requires that the deprivation [of medical care] be "sufficiently serious." *Farmer*, 511 U.S. at 833. The subjective component relates to a defendant's state of mind and requires deliberate indifference. *Id.* "To be cruel and unusual, a punishment must involve more than an ordinary lack of due care for the prisoner's interests or safety." *Whitley v. Albers*, 475 U.S. 312, 319 (1986). "Unsuccessful medical treatment, acts of negligence, [neglect], or medical malpractice do not constitute deliberate indifference, nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances." *Gobert*, 463 F.3d at 346. Even gross negligence does not rise to the level of deliberate indifference. *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 645 (5th Cir. 1996).

Individual Defendants, Myers, Broussard, Fontenot, and LeDoux, argue that there are no facts alleged that would demonstrate that they acted with deliberate indifference regarding Plaintiff's medical care. In order to set forth a claim under *Bivens,* Plaintiff must allege facts which show that each named defendant personally engaged in conduct that violated Plaintiff's Constitutional rights. Furthermore, respondeat superior is inapplicable in an individual capacity suit under *Bivens. Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior."). "Because vicarious liability is

inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Id.*

Defendants assert that Warden Myers was not at the FCC Oakdale facility when the events, which Plaintiff complains of occurred. Defendants submit summary judgment evidence that Warden Myers began his tour of duty as Warden in November 2018, and retired in May 2020.[37] Plaintiff submits no evidence to dispute this and further agrees that he has no claim for failure to properly hire, train and supervise the subordinates. Accordingly, the *Bivens* claims asserted against Individual Defendant Myers will be dismissed, with prejudice.

Defendants, Broussard, Fontenot, and LeDoux argue that Plaintiff has failed to allege any facts to support a *Bivens* claim for improper medical treatment. Defendants remark that a claim for improper escort is not a cognizable Eighth Amendment constitutional violation. See *Ziglar v. Abassi*, 137 S.Ct. 1843, 1855 (2017). Because Plaintiff has failed to allege facts to establish that these Defendants were deliberately indifferent as to Plaintiff's medical needs, the *Bivens* claims against Individual Defendants, Broussard, Fontenot and LeDoux will be dismissed with prejudice.

*Dismissal of Bivens claims against Dr. Joel Alexandre and Nurse Thomas*

In his opposition, Plaintiff, through counsel asserts that it would be premature for the Court to address the instant Motion for Summary Judgment because additional

---

[37] Defendant's exhibit A, Att. 1.

discovery is needed. Defendants asserts that Plaintiff was provided medical and administrative records directly related to his improper medical care, from the BOP in this case and another related case,[38] since August 12, 2019.[39] Additionally, Plaintiff conducted discovery in this matter and was provided discovery responses including medical records for the relevant time period, inmate histories of both medical facilities and housing, medical restriction history, staffing lists and rosters for January 4 and 5, 2017, and BOP regulations and policy statements related to special housing units, escorted trips, and use of force.[40] The Court further notes that Plaintiffs' counsel has deposed both Dr. Alexandre and Nurse Thomas.[41] Accordingly, the Court finds that further discovery to address the instant Motion for Summary Judgment is not necessary.

Plaintiff complains that Dr. Alexandre cut off his pain medication in retaliation for having filed a grievance against Nurse Mary, refused Plaintiff medical care, and intentionally delayed Plaintiff's medical care. Plaintiff argues that Dr. Alexandre was deliberately indifferent to his medical needs.

Defendant Alexandre argues that Plaintiff has failed to establish a *Bivens* claim against him for improper medical treatment. Defendants rely on Plaintiff's medical records from January 2017, through April 2018, when Dr. Alexandre retired from the Bureau of Prisons.[42] Dr. Alexandre asserts that he personally treated Plaintiff to address all of his

---

[38] Civil Action 2:18-692, *Havlik v. USA*.
[39] Declaration of AUSA Shannon T. Brown, Attachment 1, Doc. 133-1. (it appears that Plaintiff conducted discovery in 2:18-692 and was provided responses and documents.
[40] *Id.*
[41] Docs. 147-4 and 147-5.
[42] Defendant's exhibit B, Att. 1.

ailments, not just those specifically concerning an injury to his back and shoulder. For example, he ordered medication and diagnostics, and medical passes.  The Court notes that on July 19, 2017, Dr. Alexandre discontinued Plaintiff's prescription for Acetaminophen with Codeine, and ordered regular Acetaminophen, three times a day.[43] Nurse Mary Thomas testified that Plaintiff never informed her in 2017 that his complaints of pain from the incident or from his chronic pain had resolved.[44]

 Plaintiff's medical records reflect the following:

| Date: | Complaint | Pain | Pain Scale | Treatment |
|---|---|---|---|---|
| 2/7/2017 | Muscle/joint ache | Yes | 9 | Tylenol 3[45] |
| 3/7/2017[46] | Sick call/med renewal | No | N/A | Tylenol[47] |
| | | | | Tylenol 3[48] |
| 4/4/2017 | Sick call/ med renewal | No | N/A | Tylenol 3[49] |
| 5/2/2017 | Sick call/med renewal | No[50] | N/A | Tylenol 3[51] |
| 5/31/2017 | Sick call/med renewal | No | N/A | Tylenol 3[52] |
| 7/12/2017 | Consult with Medical doctor as to Plaintiff's chronic care complaints[53] | | | |

---

[43] Plaintiff's exhibit,  Mary Thomas deposition, p. 24, Doc. 147-4.
[44] *Id.* pp. 27-28.
[45] Acetaminophen/Codeine 300/30MG tab; take two tablets twice daily as needed. Doc. 127-3, p. 76
[46] The medical records also indicate prescriptions on this date for complaints irrelevant to Plaintiff's lawsuit and will not be addressed herein.
[47] Take 3 tablets of 325 MG Acetaminophen every eight hours for pain, twice daily as needed. Doc. 127-3, p. 70.
[48] Acetaminophen/Codeine 300/30MG; take two tablets twice daily as needed for pain. *Id.*
[49] Acetaminophen/Codeine 300/30MG; take two tablets twice daily as needed for pain. *Id.* p. 53.
[50] The Assessment was to renew the Tylenol3 for management of chronic pain. *Id.* p. 49.
[51] Acetaminophen/Codeine 300/30MG; take two tablets twice daily as needed for pain. *Id.*
[52] Acetaminophen/Codeine 300/30MG; take two tablets twice daily as needed for pain. Doc. 127-3, p. 37.
[53] *Id.* p. 34.

| 7/19/2017 | Other[54] | Yes | 9 | Tylenol[55] |
| 09/01/2017 | Refill request[56] and problem with knee | Yes | 9 | Several Rxs[57] |
| 10/03/20217 | Medical return trip encounter | No | N/A | N/A[58] |
| 11/06/2017 | Sick call/right shoulder and back pain | Yes | 9 | OTC[59] Tylenol[60] |

The medical records further indicate that on 10/3/2017, Plaintiff was sent to the Orthopedic Center of Louisiana. He was assessed with a "Healed T-12 wedge deformity compression fracture with possible right sided nerve root impingent...,"[61] and a "right shoulder rotator cuff tear."[62] The medical provider requested an MRI for further evaluation and treatment.[63]

Nurse Thomas also testified that as a result of the January 2017 incident, Plaintiff was seen by an orthopedist in October 2017, and he was not given any other treatment other than pain medication.[64]

Dr. Alexandre testified in his deposition, that for an inmate to be seen by an outside medical provider/specialist, someone had to first ask for a consultation or specialist to start

---

[54] 54 Plaintiff requested information as to what was going to be done about his shoulder, consults and pain medication. Doc. 127-3, p. 30.

[55] Due to Plaintiff's complaint of continued right shoulder pain, and joint pain, analgesics were ordered, and an orthopedist consult was ordered. *Id.* p. 32. Also Tylenol3 was discontinued and replaced with Tylenol.

[56] The medical records indicate that Plaintiff was requesting a medication refill for chronic care and complains of left knee pain.  There is no mention of shoulder or back pain.

[57] The record indicates numerous prescriptions were ordered for an unrelated illness, and Plaintiff was counseled on 09/12/2017 as to Plan of Care. Doc. 127-3, pp 18-20.

[58] This record is a return trip from an outside medical facility.  Plaintiff has no complaints of pain. p. 11, Doc. 127-3.

[59] Over the Counter.

[60] Referred to a Medical Doctor for chronic pain management. P. 6, Doc. 127-3.

[61] P. 4, Doc. 127-3.

[62] *Id.*

[63] *ID.*

[64] *Id.* pp. 31-32. The medical record here indicates that Plaintiff has a torn rotator cuff, and a "T-spine T12 compression ... with nerve impingement..." *Id.*

that process.[65] The medical records indicate that Plaintiff fell on January 4, 2017, and made a sick call on January 10, 2017 as to that incident,[66] after his return from a medical facility for an unrelated illness. The treating Nurse ordered "plain films of the bilateral upper shoulders and mid back.[67] Plaintiff requested and received Tylenol 3, with codeine refills each time he made a request, from February 9, 2017,[68] until July 19, 2017, at which time, his refills were discontinued,[69] and replaced with Tylenol, without Codeine.[70] On the day that Plaintiff requested this particular refill, he reported his pain to be a 9 out of a scale of 10 and asked if something could be done about his shoulder.[71] Dr. Alexandre testified that he discontinued the Tylenol 3 because Plaintiff had been taking it too long, but he did not document his reasoning as part of the medical records.[72] Also around this time, the medical records note that Plaintiff was going to be evaluated by the MD for the sick call and chronic care complaints.[73]

Dr. Alexandre testified that an X-ray was taken shortly after the incident, but no other investigation was done or a diagnosis performed from January 15, 2017 up to July 19, 2017, other than prescribed pain medication, despite an unknown cause of the pain.[74] Afterwards, a referral to an orthopedist was made[75] and Plaintiff was seen by the

---

[65] Plaintiff's exhibit , Joel Alexandre deposition. pp. 23-24, Doc. 147-5.
[66] Plaintiff's exhibit, Doc. 147-6, p. 1.
[67] Plaintiff's exhibit, Doc. 147-6, p. 2.
[68] *Id.* p. 25.
[69] *Id.* p. 26.
[70] *Id.* p. 27.
[71] *Id.* p. 28.
[72] *Id.* p. 49.
[73] *Id.* p. 34.
[74] *Id.* pp. 31-36, 48.
[75] On July 19, 2017, the Assessment authored by Nurse Mary Thomas expressly states "enter orthopedist consult, RTC for worsening s/s." Plaintiff's exhibit, p. 6, doc. 147-6.

orthopedist on October 3, 2017.[76] The orthopedist found that Plaintiff had a torn rotator cuff, and a T-12 compression fracture with nerve impingement.[77]

During the relevant time frame, Plaintiff's primary care providers were Nurse Mary Thomas and Dr. Alexandre. Plaintiff argues that Defendants Alexandre and Thomas acted with deliberate indifference as to his medical care by not further investigating his continued complaints of pain in his back and shoulder. As noted above, he first reported his complaints on January 10, 2017, and the only treatment provided was an X-ray[78] and a continued prescription of Tylenol 3 until July 19, 2017, when it appears that Nurse Thomas entered an order for an orthopedist consult.  Plaintiff was then seen by an Orthopedist in October.

The Court has carefully reviewed the medical records and notes that for several months, (from March up until July), Plaintiff's Tylonol 3 prescriptions were being refilled, but he was not complaining of any shoulder or back pain. The Court also notes that Plaintiff had been on Tylenol 3 for his chronic pain prior to the January 4, 2017, incident for chronic pain from an unrelated illness.  When he inquired about his shoulder pain in July 2017, Nurse Thomas entered an orthopedic consult and Plaintiff was later seen by an outside medical provider.   The medical records also indicate that Plaintiff had several other illnesses that were immediately addressed with numerous medications. It appears that Plaintiff disagrees with Defendants' medical treatment. The Court finds that Plaintiff has

---

[76] *Id.* pp. 33, 52.
[77] *Id.* p. 53.
[78] Plaintiff testified that he had three (3) X-rays and they all showed compression fractures, the last one showed a compression fracture of T11, T 12 and L1. Plaintiff's exhibit, Havlik Deposition, p. 56, Doc. 147-2. See also Doc. 127-3, p. 11.

failed to show that Dr. Alexandre and Nurse Thomas were deliberately indifferent to Plaintiff's serious medical needs that would constitute an "unnecessary and wanton infliction of pain." *Easter v. Powell*, 467 F.3d 459, 467 (5th Cir. 2006). "Deliberate indifference is an extremely high standard to meet .... the plaintiff must show that the officials 'refused to treat him, ignored his complaints, intentionally treated him incorrectly or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'" *Domino,* 239 F. 3d at 756.As such, the Court will dismiss the individual claims of improper medical care as to both Dr. Alexandre and Nurse Thomas.

*Qualified immunity*

Next, Individual Defendants move to be dismissed in their individual capacity because they are protected through qualified immunity.

"A qualified immunity defense serves to shield a government official from civil liability for damages based upon the performance of discretionary functions if the official's acts were objectively reasonable in light of then clearly established law. *Drew v. Town of Church Point*, 2018 WL 1973247 (W.D. La. 2018) (quoting *Atteberry v. Nocona Gen. Hosp.*, 430 F.3d 245, 253 (5th Cir. 2005). Qualified immunity is an "expression of policy designed to aid in the effective functioning of government" and recognizes that an officer acting reasonably may make a mistake and as a result acknowledges that "it is better to risk some error than not decide at all." *Sheuer v. Rhoades*, 416 U.S. 232, 94 S.Ct. 1683 (1959). "Qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" (quoting *Malley v. Briggs*, 475 U.S. 335, 341 106 S.Ct. 1092 (1986).

The doctrine of qualified immunity attempts to balance two competing societal interests: "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). These interests combine to create an affirmative defense that shields public officials sued in their individual capacities "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

A two-fold inquiry is utilized to determine whether qualified immunity is applicable: (1) whether the plaintiff has alleged a violation of a clearly established constitutional right; and (2) if so, whether the officer's conduct was objectively reasonable. *Mangieri v. Clifton*, 29 F.3d 1012, 1016 (5th Cir. 1994); *Hare v. City of Corinth*, 135 F.3d 320, 325 (5th Cir. 1998).

With respect to the first factor, a constitutional right "is clearly established if, in light of pre-existing law, the unlawfulness is apparent." *Id.* Even if the government officials' conduct violated a clearly established right, the official is nonetheless entitled to qualified immunity if his conduct was objectively reasonable. *Hernandez Ex. Rel. Hernandez v Texas of Protective and Regulatory Services*, 380 F.3d 872, 879 (5th Cir. 2004). Thus, the doctrine "shields an officer from suit when they make a decision that, even if constitutionally deficient, protects the officer from the hazy border between excessive and acceptable force." *Brousseau v. Haugen*, 543 U.S. 194, 197, 125 S.Ct. 596, 599 (2004), citing *Saucier v. Katy*, 533 U.S. 194, 206, 121 S.Ct. 2151.

In *Mangieri, supra*, the Fifth Circuit held that the objective reasonableness prong of qualified immunity analysis is a question of law properly addressed by the trial court in the context of summary relief, not the jury, stating that "a district court errs in 'holding that the objective reasonableness' prong of the qualified immunity standard is generally a factual question for the jury. See *Mangieri*, 29 F.3d at 1015-1016.

A good-faith assertion of qualified immunity alters the usual summary judgment burden of proof, shifting it from the defendant-movant to the plaintiff-non-movant to show that the defense is not available. *Cass v. City of Abilene*, 814 F.3d 721, 728 (5th Cir. 2016) (quoting *Trant v. Wade*, 776 F.3d 368, 376 (5th Cir. 2015)).

Plaintiff's only remark as to the CO Defendants' qualified immunity, is that "the guards broke his back and hurt his shoulder by forcing him down the stairs."[79] Plaintiff argues that Dr. Alexandre and Nurse Thomas were deliberately indifferent to his medical needs, but as noted hereinabove, the Court finds that Dr. Alexandre and Nurse Thomas were not deliberately indifferent to Plaintiff's medical needs and their conduct did not rise to the level of a constitutional violation.  Plaintiff makes no argument as to Warden Myers' applicability of qualified immunity.

Plaintiff bears the burden to demonstrate the inapplicability of the qualified immunity defense once invoked. *Al-Ra'id v. Ingle*, 69 F.3d 28, 33 (5th Cir. 1995; *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002). Plaintiff has failed to demonstrate that the CO Defendants, LeDoux, Fontenot, and Broussard violated a clearly

---

[79] Opposition,  p. 16, Doc. 132.

established constitutional right, and if so, whether their conduct was objectively reasonable. Similarly, Plaintiff has failed to demonstrate that Warden Myers violated a clearly established constitutional right.  Finally, Plaintiff has failed to establish that Defendants, Dr. Alexandre and Nurse Thomas violated a clearly established constitutional right, and if so, whether their conduct was objectively reasonable.  As such, the Court finds that these Defendants are entitled to qualified immunity.

## **CONCLUSION**

The Court will dismiss without prejudice Plaintiff's claims as to all of the *Bivens* claims, excepting improper medical care for failure to exhaust administrative remedies.  Additionally, the Court will dismiss with prejudice all of the *Bivens* claims against the Defendants in their individual capacity, as Plaintiff has failed to state a claim against the Individual Defendants. Finally, the Court will dismiss with prejudice the Defendants in their individual capacity because they are entitled to qualified immunity.

**THUS DONE AND SIGNED** in Chambers on this 8th day of January, 2025.

_____
**JAMES D. CAIN, JR.**
**UNITED STATES DISTRICT JUDGE**