UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| **NEIL E HAVLIK #24985-009** | **CASE NO. 2:19-CV-01018** |
| **VERSUS** | **JUDGE JAMES D. CAIN, JR.** |
| **ROD MYERS ET AL** | **MAGISTRATE JUDGE LEBLANC** |

## MEMORANDUM RULING

Before the Court is the "United States' Motion to Dismiss" (Doc. 153) wherein the United States moves to dismiss Plaintiff's FTCA claims asserted in his Supplemental and Amending Complaint[1] for lack of subject matter jurisdiction.

## BACKGROUND

On January 4, 2017, Plaintiff was being led downstairs to be escorted to the Special Housing Unit ("SHU").[2] Prior to being led downstairs, one of the officers told Plaintiff to put his hands behind his back to be handcuffed.[3] Plaintiff alleges in his complaint that he is usually handcuffed in front so he can use his cane.[4] He also alleges that the officers grabbed his hands and applied the handcuffs with unnecessary force, after which, one of the officers placed the cane in Plaintiff's hands behind his back and pushed Plaintiff toward the top step of the stairs.[5] Plaintiff alleges he stumbled forward and Officers LeDoux, Fontenot and Broussard pulled Plaintiff upright by his arms, rotating Plaintiff's arms

---

[1] Doc. 92.
[2] Fourth Amended Complaint, ¶ IV(A), Doc. 92.
[3] *Id.*
[4] *Id.* **¶ IV(A)(5)**.
[5] *Id.* **¶ IV(A)(6)(7)**.

upward behind his back.[6] Plaintiff alleges that the overextension of his arms caused him to lose his balance at the top of the stairs.[7] The Officers pulled Plaintiff down the stairs, forcing Plaintiff forward by pulling his arms even more and forcing Plaintiff down the stairs.[8] Plaintiff screamed in pain, but the Officers continued pulling Plaintiff down the stairs by his arms.[9] Plaintiff was then placed in a cell, his cane taken away, and he was uncuffed.[10]

Plaintiff alleges that he reported a serious injury but was not seen until four (4) days later.[11] Among other injuries, Plaintiff suffered a torn rotator cuff and broke his back in at least two (2) places.[12] Plaintiff alleges he was seen by FNP Mary Thomas who did not schedule any x-rays until three (3) weeks later.[13] Plaintiff alleges that the February 15, 2017, chest x-ray showed a compression fracture of Plaintiff's T-12 vertebra.[14] Plaintiff was seen against in March 2017 by FNP Thomas.[15] He inquired as to what the February 15, 2017, x-ray revealed; allegedly, FNP Thomas told him there was no x-ray in his file.[16]

Plaintiff alleges he continued to complain of back and shoulder pain, making two (2) sick-call visits per month.[17] Plaintiff alleges that his medical care was intentionally delayed, including not being seen by an Orthopedist until 10 months after the January 5,

---

[6] *Id.* ¶ **IV(A)(8)**.
[7] *Id.* ¶ **IV(A)(9)**.
[8] *Id.* ¶ **IV(A)(10)**.
[9] *Id.* ¶ **IV(A)(11)**.
[10] *Id.* ¶ **IV(A)(13)(14)**.
[11] *Id.* ¶ **IV(B)(4)**.
[12] *Id.* ¶ **IV(B)(2)(3)**.
[13] *Id.* ¶ **IV(B)(5)**.
[14] *Id.* ¶ **IV(B)(6)**.
[15] *Id.* ¶ **IV(B)(7)**.
[16] *Id.*
[17] *Id.* ¶ **IV(B)(8)**.

2017, incident.[18] Plaintiff was seen by an Orthopedist in October 2017 who diagnosed a compression fracture of the T-12 vertebra and a torn right shoulder rotator cuff.[19]

Plaintiff complains about the lack of accommodations after he suffered his injuries, such as a reasonable mattress or pillow, and/or a lift or other device suitable to provide safe movement.[20] He also complains of a loss of personal property by being charged for the sick-call visits and co-pays for his chronic care.[21] Plaintiff also complains that he was being threatened by Dr. Joel Alexandre for filing a grievance, and that Dr. Alexandre retaliated against him by withholding his pain medication.[22] Finally, Plaintiffs alleges that Warden Myers is responsible for his injuries because he failed to properly hire, train, and supervise the correctional officers and staff.[23] He also alleges that Warden Myers is liable for failure to take reasonable action to prevent further harm, failure to establish and enforce sufficient rules for the protection of inmates and the protections of inmates' civil rights, as well as the failure to ensure Plaintiff received proper medical care.[24]

Plaintiff asserts claims of willful and negligent conduct against Defendant, acting individually and in concert,[25] including intentional and negligent infliction of physical injury, physical abuse of an elderly and disabled inmate, refusal of medication and medical care, intentional delay of medical care, failing to train and supervise employees, negligent screening and hiring of employees, violating Plaintiff's constitutional rights, violation of

---

[18] *Id.* ¶ **IV(B)**(9).
[19] *Id.* ¶ **IV(B)**(10).
[20] *Id.* ¶ **IV(B)**(15)(16).
[21] *Id.* ¶ **IV(B)**(17)(18).
[22] *Id.* ¶ **IV(B)**(19)(20).
[23] *Id.* ¶ **IV(B)**(21).
[24] *Id.*
[25] *Id.* ¶ C.

Plaintiff's rights under state and federal law, deliberate indifference, cruel and unusual punishment, and retaliation.

## **RULE 12(b)(1) STANDARD**

Rule 12(b)(1) of the Federal Rules of Civil Procedure provides:

> Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required. But a party may assert the following defenses by motion: (1) lack of subject-matter jurisdiction. . .

A court may base its disposition of a motion to dismiss under Rule 12(b)(1) on: (1) the complaint alone; (2) the complaint supplemented by undisputed facts; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Robinson v. TCI/US West Communications, Inc.*, 117 F.3d 900 (5th Cir. 1997), citing *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir.), *cert. denied,* 454 U.S. 897, 102 S.Ct. 396, (1981).

Courts may consider affidavits and exhibits submitted in connection with a Rule 12(b)(1) motion to dismiss. *Moran v. Kingdom of Saudi Arabia*, 27 F.3d 169, 172 (5th Cir. 1994). Once challenged with competent proof, the plaintiff must prove by a preponderance of the evidence that the court has subject matter jurisdiction. *Middle South Energy, Inc. v. City of New Orleans*, 800 F.2d 488, 490 (5th Cir. 1986). A motion to dismiss under Rule 12(b)(1) should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claims that would entitle plaintiff to relief. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

Motions filed under Rule 12(b)(1) of the Federal Rules of Civil Procedure allow a party to challenge the subject matter jurisdiction of the district court to hear a case. The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction. *McDaniel v. United States*, 899 F.Supp. 305, 307 (E.D.Tex.1995). The party asserting jurisdiction has the burden of pleading and proving that the Court has subject matter jurisdiction and must do so by a preponderance of the evidence. *Alabama-Coushatta Tribe of Texas v. United States*, 757 F.3d 484, 487 (5th Cir. 2014). A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case. *Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998).

When reviewing a "facial attack" on jurisdiction, the well-pleaded factual allegations of the Complaint are accepted as true, and the Court evaluates the sufficiency of those allegations. *Isom v. Louisiana Off. of Juv. Just.*, No. CV 21-00013, 2021 WL 5763560, at *2 (M.D. La. Dec. 3, 2021) (citing *Paterson v. Weinberger*, 644 F.2d 521, 524 (5th Cir. 1981)). A motion to dismiss under Rule 12(b)(1) is analyzed under the same standard as a motion to dismiss under Rule 12(b)(6). *Hall v. Louisiana*, 974 F. Supp. 2d 978, 985 (M.D. La. 2013) (citing *Benton v. U.S.*, 960 F.2d 19, 21 (5th Cir.1992)).

## **LAW AND ANALYSIS**

Defendant, the United States, moves for dismissal as follows: (1) lack of subject matter jurisdiction because Plaintiff's claims are time-barred under the FTCA; (2) lack of subject matter jurisdiction over any claims of intentional tort under the FTCA claims; (3),

and (4) Plaintiff's claims involving the correctional officer's restraint and escort on January 4, 2017, are barred based on the discretionary function exception to the FTCA.

*Lack of subject matter jurisdiction because Plaintiff's claims are time-barred under the FTCA*

The United States argues that Plaintiff's FTCA claims were not timely, thus, they has been no waiver of sovereign immunity. The United States contends that the Fourth Amended Complaint, filed on December 2, 2022, was the first time in this lawsuit that an FTCA claim was asserted against it. The United States moves to dismiss the FTCA claims asserted in the live Complaint—the Fifth Amended Complaint, filed on October 16, 2023.[26] The United States asserts that the applicable statute of limitations for Plaintiff's FTCA claims ran on January 6, 2019 (improper charge of co-pay; claim number 2017-1318) and September 18, 2019 (denial of medical care and administrative tort claim for January 4, 2017 incident; claim number 2017-4938 c/w 2018-3597).

"The United States, as sovereign, is immune from suit save as it consents to be sued." *United States v. Sherwood*, 312 U.S. 584, 586 (1941). The FTCA provides an example of the United States' consent to be sued, stating that "[t]he United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances...." 28 U.S.C. § 2674; *see also Martin v. Halliburton*, 618 F.3d 476, 486 (5th Cir.2010)("The FTCA abrogates the Government's sovereign immunity for torts committed by its employees in circumstances where, if the Government were a private person, the Government would be

---

[26] Doc. 92.

liable under state law."). However, "[a] waiver of the Government's sovereign immunity will be strictly construed, in terms of its scope, in favor of the sovereign." *See Lane v. Pena*, 518 U.S. 187, 192 (1996).

Under the FTCA, before filing a complaint in District Court, a plaintiff must present an administrative claim to the agency. *See* 28 U.S.C. § 2675 ("An action shall not be instituted upon a claim against the United States for money damages for injury ... unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing...."). Once an agency denies an administrative tort claim, suit may only be filed against the United States in District Court not later than six (6) months after the date of the denial. *See* 28 U.S.C. § 2401(b) (barring a tort claim against the United States "unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless action is begun within six months after the date of mailing ... of notice of final denial of the claim by the agency to which it was presented").

The United States asserts that Plaintiff filed two main administrative tort claims with the Bureau of Prisons ("BOP") that are raised in this suit. On June 9, 2017, Plaintiff filed Administrative Claim number 2017-4938 concerning the January 4, 2017, incident wherein he complained of denial of medical care; in the BOP's March 18, 2019 denial, this claim was consolidated with 2018-3597, which included Plaintiff's administrative tort claim from the January 4, 2017, incident.[27] Plaintiff also filed other administrative claims (denial

---

[27] Doc. 153-8 and 11.

of an extra mattress, withholding of pain medication, and denial of medical care), which the United States suggests prescribed on September 18, 2019. The United States argues that because Plaintiff did not amend his complaint to add any FTCA claims until his Fourth Amended Complaint,[28] which was filed on December 2, 2022, any tort claim filed by Plaintiff by this amendment is prescribed.

The United States also relies on Plaintiff's "Motion to Withdraw and Dismiss Tort Claim Lawsuit" (Doc. 55) wherein Plaintiff moved to dismiss his three tort claim law suits in Civil Actions 2:18-692, 2:19-978, and 2:19-1511, reasoning that the "tort claim lawsuits contain some of the same material and allegations that are asking for relief and compensation as in Plaintiff's Bivens Law Suit No. 2;19-cv-1018.  Plaintiff is barred from getting relief or compensation from more than one lawsuit containing the same subject matter and allegations."[29]   That Motion was granted on May 31, 2022, and the three tort lawsuits were dismissed.[30]

On November 30, 2017, Plaintiff filed Administrative Claim number 2018-1318 wherein he complained about illegal co-pays for prescriptions and medical visits that were charged to his inmate account.[31] The BOP denied that claim on July 6, 2018. The United States asserts that this claim prescribed on January 6, 2019. Here, the United States argues that any claims of illegal co-pays are prescribed because Plaintiff did not file suit until August 5, 2019, which is well after the six-month statutory statute of limitations.

---

[28] Doc. 73
[29] Doc. 55, p. 1, filed May 27, 2022.
[30] Doc. 57.
[31] Doc. 153-5 and 12.

As such, the United States contends that under 28 U.S.C. § 2401(b), there has been no waiver of sovereign immunity, and this Court lack subject matter jurisdiction over these claims. The Court agrees with the United States that Plaintiff's claims of illegal co-pays are prescribed.

Plaintiff contends that read as a whole, the original Complaint names the United States as a Defendant and alleges FTCA claims. Also, Plaintiff advises that in his original Complaint, he included previously filed petitions and other exhibits,[32] that expressly named the United States as a Defendant and alleged FTCA tort claims.

The Original Complaint,[33] alleges a *Bivens* claim[34] for failure to provide adequate medical care and/or denial of medical care.[35] As to his injuries, Plaintiff alleges that he had "[m]ultiple compression fractures of spine and torn rotator cuff plus other listed in Complaints and Affidavit,"[36] His Complaint also refers to other lawsuits he has filed dealing with the same facts involved in this action.[37] As part of his filings in his Original Complaint, Plaintiff states that he "brings this action pursuant to the applicable provisions of the Federal Tort Claims Act."[38] Plaintiff also filed with his original Complaint, at page 19, captioned "Neal Havlik v. United States" titled "Plaintiff's Verified Complaint."[39] This filing expressly states under a section entitled "Jurisdiction and Venue, General and Common Allegations" at ¶ 4 that "The Federal Tort Claims Act (FTCA) 28 USC 2671 et

---

[32] Doc. 1.
[33] Doc. 1.
[34] Doc. 1, ¶ II(A).
[35] *Id.* ¶ VI.
[36] *Id.* ¶ V and VII (E)(2).
[37] *Id.* ¶ VIII.
[38] Doc 1, "Plaintiff's Complaint", ¶ 1. p. 18.
[39] Doc. 1.

seq. authorizes this suit."[40] Plaintiff also expressly states that he "attaches hereto a copy of his FTCA Tort Claim, as Exhibit "1." All exhibits hereto are incorporated herein as if set forth word for word."[41] Paragraph 8 state that "[a]ll counts are based on negligence or gross negligence ...."[42] This document, incorporated with Plaintiff's Complaint alleges the same factual allegations that occurred on January 4, 2017.

Plaintiff attaches to his original Complaint, Doc. 1-2, a Document titled "Affidavit of Neil Havlik" with a caption that reflects that "Plaintiff, Neal Havlik v. Defendants, United States Through the United States Attorney General and United States through the United States Attorney for the Western District of Louisiana."[43]

As noted by Plaintiff's counsel, Federal Rule of Civil Procedure 10(c) provides that a copy of a written instrument that is an exhibit to a pleading is part of the pleading for all purposes. The Court is not inclined to ignore the attachments to Plaintiff's original Complaint just because Plaintiff voluntarily dismissed his three (3) other lawsuits and referred to the instant lawsuit as a *Bivens* lawsuit.

After the original Complaint was filed, the Magistrate Judge ordered Plaintiff to amend his Complaint;[44] Plaintiff complied on November 5, 2019.[45] On April 17, 2020, the Magistrate Judge issued a Memorandum Order for the clerk to serve Plaintiff with two summons forms for the United States and each named defendant.[46] She also ordered that

---

[40] *Id.*
[41] *Id.* ¶ 5, p. 19.
[42] D.
[43] Doc. 1-2.
[44] Doc. 5.
[45] Doc. 6.
[46] Doc. 7.

the United States and defendants, Myers, Howard Chano, Alexander Griffin, Thomas, LeDeux, Oakdale Health Services, John Doe 1 and John Doe 2 filed a response 60 days after service.[47] Plaintiff subsequently moved for an extension to serve Defendants, which was granted.[48] Plaintiff then moved to amend the Magistrate Judge's Order of service to correct names of certain Defendants; that Motion was granted on June 9, 2020.[49]

On July 30, 2020, Plaintiff filed another Motion for Extension of time to effect service; this Motion was granted on August 17, 2020, permitting Plaintiff until November 2, 2020, to file service documents in the record.[50] On November 17, 2020, a summons was issued as to the US Attorney and US Attorney General; that summons was returned executed on November 24, 2020, and filed in the record on November 30, 2020.[51]

The United States argues that the Fourth Amended Complaint filed December 2, 2022, was the first complaint to assert, or re-assert any FTCA claims against it; therefore, it is untimely because it is over three years past the allowable statutory period for the tort claim.

Liberally construing the Original Complaint filed by Havlik, *pro se,* on August 5, 2019, read with the attachments, the Court finds that Plaintiff named the United States as a defendant under the FTCA.

*Lack of subject matter jurisdiction over any claims of intentional tort under the FTCA claims*

---

[47] *Id.*
[48] Doc 8 and EO 9.
[49] Doc. 10 and EO 11.
[50] Doc. 14 and EO 16.
[51] Docs. 20 and 22.

The United States maintains that under the FTCA, the court lacks subject matter jurisdiction over claims of intentional tort. The FTCA contains an exception to its waiver of sovereign immunity known as the "intentional tort exception." *See, e.g., Levin v. United States*, 568 U.S. 503, 507 (2013) ("We have referred to [28 U.S.C.] § 2680(h) as the 'intentional tort exception.'" (quoting *United States v. Shearer*, 473 U.S. 52, 54 (1985))); *see also Dickson v. United States*, 11 F.4th 308, 313-14 (5th Cir. 2021) (citing 28 U.S.C. § 2680(h)). The intentional tort exception generally preserves the United States' immunity against claims arising out of intentional torts such as assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, misrepresentation, deceit or contractual interference. *See* 28 U.S.C. § 2680(h). The intentional tort exception has shielded the United States from liability for serious acts of misconduct allegedly committed by federal officers. As such, the United States argues the Plaintiff's claims of intentional torts are barred by the § 2680(h) tort exception to which there has been no waiver of sovereign immunity.

First, the United States argues that intentional torts are barred under the FTCA, and additionally, Plaintiff failed to exhaust his administrative remedies as to any intentional tort brought against the United States under the FTCA.

The Court agrees that to the extent that Plaintiff is pursuing claims of intentional tort, those claims are barred, unless committed by federal law enforcement officers. However, the United States argues that if Plaintiff's tort claims are carved out as an exception because they are considered federal law enforcement officers, Plaintiff failed to

exhaust his administrative remedies for any intentional tort claims he may have raised against the correctional officers under the FTCA.

The FTCA "grants a limited waiver of sovereign immunity and allows tort claims against the United States." *Willoughby v. U.S. ex rel. U.S. Dep't of the Army*, 730 F.3d 476, 479 (5th Cir. 2013). However, "[a]n action cannot be brought against the United States for the negligent act of one of its employees 'unless the claimant shall have first presented the claim to the appropriate Federal agency.'" *Life Partners Inc. v. United States*, 650 F.3d 1026, 1029 (5th Cir. 2011) (quoting 28 U.S.C. § 2675(a)). Further, the presentment "requirement is a prerequisite to suit under the FTCA." *Id*. at 1030. Finally, "[t]he requirement of exhaustion of administrative review is a jurisdictional requisite to the filing of an action under the FTCA." *Gregory v. Mitchell*, 634 F.2d 199, 203–04 (5th Cir. 1981); *see Life Partners*, 650 F.3d at 1028 (affirming dismissal for lack of subject matter jurisdiction).

The United States asserts that in his SF-95 filed on June 2, 2017, Plaintiff claim raised with the BOP states that he: (1) was handcuffed behind his back, (2) could not use his cane to walk, (3) the COs did not use the lift to move Claimant, and (4) was forced to walk without his cane or adequate assistance. As noted, the SF-95 reported claim does not allege or complain that Plaintiff was pushed, pulled, or drug down the stairs by the Correctional Officers ("COs") during the January 4, 2017. The United States construes this conduct as an intentional tort and moves to dismiss Plaintiff's intentional tort claims for lack of jurisdiction because Plaintiff failed to exhaust his administrative remedies as to these claims.

Plaintiff argues that every action by the COs was inherently intentional because they "intended to cuff his hands behind his back and force him down the stairs." Plaintiff then contends that despite there being no allegation that the officers intended to injure Plaintiff, the injury was caused when he started to fall, and the guards caught him by his handcuffs in an attempt to keep him from falling. Plaintiff then maintains that these allegations of intentional choices led to a negligent injury. Plaintiff cites *Breland v. Schilling*, 550 so.2d 609, 614 (La. 1989) for the proposition that an intentional tort not only means the defendant intended to injure the Plaintiff, but that he also intended the full extent of the injury inflicted.

While the Court agrees that the COs intended to handcuff Plaintiff, that does not equate to an intent to injure. As such, the Court finds that Plaintiff's claims of injury for the January 4, 2017, incident sound in negligence, not as an intentional tort. As such the exception for intentional tort as to this conduct is not applicable and the United States' motion as to this claim will be denied.

The United States next asserts that Plaintiff has alleged that he was intentionally denied medical care and reminds the Court that it previously ruled that the claims against Dr. Alexandre and Nurse Thomas, in their individual capacity were dismissed. However, Plaintiff contends that he should be able to proceed with his claim under the FTCA for negligent denial of medical care.

The United States points out that in Paragraph H of Plaintiff's [Fourth] Supplemental & Amending Complaint 10.16.2023, Plaintiff alleged the following:

> There are no allegations of negligent medical treatment or negligent failure to treat alleged herein. All refusal of medical care, delay of medical care and concealment of medical conditions outlined below was intentional, and therefore, not governed by the Louisiana Medical Malpractice Act. LSA-RS 40:1231.1(13).

Here, the Court finds that Plaintiff's claims concerning his medical treatment was alleged as an intentional tort and under the FTCA's intentional tort exception, they are barred.

*Are Plaintiff's claims involving the correctional officer's restraint and escort on January 4, 2017, barred based on the discretionary function exception to the FTCA*

The United States, as a sovereign entity, is immune from suit except insofar as it has consented to be sued. *Lehman v. Nakshian*, 453 U.S. 156, 160-61 (1981) (quoting *United States v. Testan*, 424 U.S. 392, 399 (1976)). The FTCA, 28 U.S.C. §§ 1346, 2671-80, is a limited waiver of sovereign immunity. *United States v. Orleans*, 425 U.S. 807, 813 (1976). Subject to several limitations and exceptions, the FTCA allows the government to be sued for money damages for personal injury, property damage or death "where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." *U.S. v. Muniz*, 374 U.S. 150, 153 (1963). Exceptions to the FTCA waiver of immunity must be strictly construed in favor of United States. *Truman v. United States*, 26 F.3d 592, 594 (5th Cir.1994).

Relevant in this case is the discretionary function exception ("DFE") to the FTCA, which prohibits any claim against the United States "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion

involved be abused." 28 U.S.C. § 2680(a). The DFE "marks the boundary between Congress's willingness to impose tort liability upon the United States and its desire to protect certain governmental activities from exposure to suit by private individuals." *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 808 (1984). Application of this exception is therefore a threshold issue—a jurisdictional issue which precedes any negligence analysis. See, e.g., *Johnson v. U.S., Dep't of Interior*, 949 F.2d 332, 335 (10th Cir. 1991).

Courts apply a two-part test to determine whether the DFE applies to a given case, bearing in mind that "it is the nature of the conduct, rather than the status of the actor, that governs whether the discretionary function exception applies in a given case." *Berkovitz by Berkovitz v. United States*, 486 U.S. 531, 536 (1988) (citing *Varig Airlines,* 467 U.S. at 813).

In *Berkovitz, supra* and *United States v. Gaubert*, 499 U.S. 315, 111 S.Ct. 1267 (1991), the DFE bars suit only if two conditions are met: (1) the acts alleged to be negligent must be discretionary, in that they involve an "element of judgment or choice" and are not compelled by statute or regulation and (2) the judgment or choice in question must be grounded in "considerations of public policy" or susceptible to policy analysis. See *Gaubert,* 499 U.S. at 322-23, 111 S.Ct. 1267; *Berkovitz*, 486 U.S. at 536, 37, 108 S.Ct. 1954. Here, as noted above, the Court has reviewed Plaintiff's Complaint, as amended and determined that his allegations of injury involving the January 4, 2017 incident, sound in negligence.

During his escort to his cell, the COs chose to put restraints on Plaintiff behind his back. The United States asserts that this was not a violation of BOP policy, but places this decision squarely in the discretion of BOP personnel, as noted below:

> Inmates under escort will be within the constant and immediate visual supervision of escorting staff at all times. Restraints *may* be applied to an inmate going on an escorted trip, *after considering the purpose of the escorted trip and the degree of supervision required by the inmate*.

BOP Program Statement 5538.07 "Escorted Trips", § 570.44 "Supervision and Restraint Requirements" (December 10, 2015) (emphasis added). The United States remarks that Plaintiff has failed to identify a mandatory rule or policy that was violated with respect to the way Plaintiff was restrained, escorted, and placed in a lower-level cell by the COs while in the SHU. See *Patel v. United States*, 398 F. App'x 22, 29 (5th Cir. 2010) ("[D]ecisions regarding the transfers and classifications of prisoners generally fall within the discretionary function exception."); *Hatten v. Bledsoe*, 782 F. App'x 91 (3rd Cir. 2019)(BOP has discretion in deciding how to best protect and restrain inmates, and the judgment involved is the type of judgment the exception was designed to shield); *Blanchard v. United States*, No. 2:14-CV-58, 2015 WL 4107311, at *10 (N.D.W. Va. July 7, 2015), aff'd, 622 F. App'x 287 (4th Cir. 2015) (decision to apply ambulatory restraints for over 62 hours was discretionary); *Caudle v. United States*, 72 F.3d 132, 1995 WL 730817, at *2 (7th Cir. 1995) (unpublished table decision) (how to supervise a unit is discretionary); *Lewis v. United States*, 618 F. App'x 483, 487 (11th Cir. 2015) (decision "as to the best way to secure" the inmate "while escorting him from the showers" was discretionary); *El-Hanafi v. United States*, No. 1:13-CV-2072-GHW, 2015 WL 72804, at

\*8-10 (S.D.N.Y. Jan. 6, 2015) (decision regarding use of restraints discretionary); *Garcia-Feliciano v. United States*, 101 F. Supp. 3d 142, 147 (D.P.R. 2015) (decisions to have prisoner "walk unaided and shackled down a flight of stairs" were "discretionary, and they were plainly motivated by policy considerations.").

The United States argues that the BOP's employees' manner of transporting and restraining inmates and where they are to be placed within the SHU are clearly discretionary and are therefore precluded under the discretionary function exclusion of the FTCA.

Plaintiff maintains that the actions of correctional officers were not rooted in policy decisions and not protected by discretionary function immunity.  Plaintiff argues that the decision to cuff Plaintiff behind his back serves no purpose of the DFE.  Plaintiff relies on *Coulthurst v. United States*, 214 F.3d 106 (2d Cir. 2000). In *Coulthurst*, a prisoner was injured by a lateral pulldown machine when a cable snapped, injuring his rotator cuff and back. *Id.* at 107. The court held that the DFE only bars suit if the judgment or choice in question was grounded in considerations of public policy or susceptible to policy analysis. *Id.* at 109. The district court found that the failure to institute an equipment inspection schedule was discretionary and applied the DFE. The appellate court reversed finding:

> Under various fair readings of the complaint, this case similarly involves negligence unrelated to any plausible policy objectives. An inspector's decision (motivated simply by laziness) to take a smoke break rather than inspect the machines, or an absent-minded or lazy failure to notify the appropriate authorities upon noticing the damaged cable, are examples of negligence fairly encompassed by the allegations of the complaint that do not involve "considerations of public policy." Such actions do not reflect the kind of considered judgment "grounded in social, economic, and political policy" which the DFE is intended to shield from "judicial 'second-

> guessing.' " If the plaintiff can establish that negligence of this sort occurred, his claims are not barred by the DFE, and he is entitled to recover under the FTCA.

*Id.* at 111 (internal citations omitted).

Plaintiff argues that the officers' decision to handcuff him behind the back, despite his use of a walking cane does not reflect judgment grounded in social, economic, and political policy. Thus, he contends that it clearly falls outside the DFE because the officers' negligence cannot be said to be based on policy considerations. Plaintiff alleged that he informed the COs that he had just been diagnosed with pneumonia and a kidney infection and could barely walk, so he needed his cane to navigate the stairs. He also alleged that there was an electric lift just within ten (10) feet away.[52] He also alleged that when they pushed him forward, he stumbled, and they caught him and pulled him upright with his arms and forced him down the stairs by overextending his handcuffed arms backward.[53]

The Court finds that the actions alleged by Plaintiff fall outside the DFE; Plaintiff is entitled to a limited waiver of sovereign immunity. The COs made the decision to handcuff plaintiff behind his back, knowing he was ill, and refused his request to use his cane. They pushed him forward, which caused him to stumble. Then they pulled him upright by his handcuffs and continued to force him down the stairs, despite the convenience of an electric lift just ten (10) feet away. This conduct cannot be the kind of judgment that is "grounded in social, economic, and political policy, which the DFE is intended to shield from "second-guessing." *United States v. Varig Airlines*, 467 U.S. 797,

---

[52] Doc. 2, pp. 17, 29
[53] *Id.*

814, 104 S.Ct. 2755 (1984). The Court finds that Plaintiff has fairly alleged negligent conduct outside the scope of the DFE. As such, if Plaintiff can establish that negligence of this sort occurred, his claims will not be barred by the DFE, and he will be entitled to recover under the FTCA.

## CONCLUSION

For the reasons explained herein, the Court will grant the United States' Motion to Dismiss (Doc. 153) in part and deny the motion in part. The Motion will be granted to the extent that the Court lacks jurisdiction of Plaintiff's intentional torts concerning medical treatment and for illegal co-pays. Otherwise, the Motion will be denied. Plaintiff's claims of negligence under the FTCA against the United States as to the January 4, 2017, incident remain viable.

**THUS DONE AND SIGNED** in chambers on this 9th day of February, 2026.

_____
**JAMES D. CAIN, JR.**
**UNITED STATES DISTRICT JUDGE**